David C. TURNER, on behalf of himself and all others similarly situated, Plaintiff,

v.

GENERAL MOTORS ACCEPTANCE CORP., Defendant.

No. 96 Civ. 6855(MBM).

United States District Court, S.D. New York.

Oct. 21, 1997.

Roger W. Kirby, Ira M. Press, Kaufman Malchman Kirby & Squire, New York City, for Plaintiff.

Thomas D. Goldberg, Day Berry & Howard, Stamford, CT, for Defendant.

## OPINION AND ORDER

MUKASEY, District Judge.

David Turner sues General Motors Acceptance Corporation for failing to disclose in an automobile lease that defendant earns interest and receives certain non-interest benefits based on plaintiff's security deposit, in violation of the Consumer Leasing Act ("CLA"), 15 U.S.C. § 1667 *et seq.* (1994), and for failing to reduce plaintiff's obligations under the lease in the amount of such benefits in violation of the Uniform Commercial Code ("UCC") and other provisions of New York law.

Defendant moves for summary judgment on all claims. Plaintiff moves for partial summary judgment on defendant's liability under the CLA and the UCC. Plaintiff moves also for certification of this lawsuit as a class action pursuant to Fed.R.Civ.P. 23. For the reasons stated below, defendant's motion for summary judgment is granted as to plaintiff's CLA claim. Plaintiff's motion for partial summary judgment is denied, and plaintiff's UCC and other state-law claims are dismissed for lack of subject matter jurisdiction. Plaintiff's motion to certify this lawsuit as a class action is denied as moot.

### I.

The following facts are not in dispute. On September 25, 1995, plaintiff entered into an agreement with defendant to lease a 1995 Chevrolet Geo Prizm through a Chevrolet dealership in Highland, New York.

(Compl.¶ 31) The lease agreement required. plaintiff to pay, *inter alia,* a refundable security deposit of $750.00. (*Id.* ¶ 33) The agreement made the following disclosures with respect to the security deposit:

> 30. *SECURITY DEPOSIT.* A refundable security deposit may be part of the payment you make when you sign this Lease. We will deduct from the security deposit any amounts you owe under this Lease and do not pay. We will not pay you interest on the security deposit. After the end of this Lease, we will refund to you any part of the security deposit that is left.

(*Id.* Ex. A ¶ 30) (emphasis in original) The lease does not disclose whether defendant earns interest or receives any non-interest benefits based on the security deposit.

Defendant placed plaintiff's security deposit into an escrow account it maintains with Chase Manhattan Bank ("Chase") in New York. (Walker Aff. ¶¶ 9–10) Defendant maintains 11 bank accounts with Chase nationwide, including three security deposit escrow accounts in New York. (*Id.* ¶ 13) As required by New York law, *see* N.Y. Gen. Oblig. Law § 7–101 (McKinney 1993), defendant places each security deposit that it receives from an automobile lease customer in New York into one of these three escrow accounts and does not commingle these funds with funds it receives from other sources. (*Id.* ¶¶ 9–10)

Defendant does not earn interest on any funds deposited in these escrow accounts. (*Id.* ¶ 12) However, defendant does receive certain non-interest benefits from Chase based in part on the funds on deposit in the New York escrow accounts. Chase awards "earnings credits" to defendant based upon the aggregate average monthly balance of its funds on deposit with Chase, including the funds in the three escrow accounts in New York. (*Id.* ¶ 13) In turn, defendant uses these credits to offset fees that Chase charges defendant for maintaining its accounts. (*Id.*) In 1995 and 1996, for .example, defendant received enough "earnings credits" to offset the maintenance and commitment fees that it

owed to Chase for each of its 11 bank accounts. (*Id.*) "Earnings credits" which exceed fees imposed in a given year are not redeemable in cash and may not be carried over to the following year. (*Id.* ¶ 14)

Defendant moves for summary judgment on plaintiff's CLA claim on the ground that the lease agreement at issue satisfied defendant's disclosure obligations. (Def. Moving Br. at 3)[1] Plaintiff cross-moves for summary judgment arguing that defendant violated the CLA when it failed to disclose that it earns interest and receives "earnings credits" based in part on the amount of plaintiff's security deposit. (Pl. Opp'n Br. at 6) Plaintiff argues also that it is entitled to summary judgment on its UCC claim because defendant failed to reduce plaintiff's obligations under the lease in the amount of the interest and "earnings credits."

## II.

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). To defeat a motion for summary judgment, the non-movant must set forth specific facts which establish a genuine issue for trial, or demonstrate that the moving party is not entitled to judgment as a matter of law. Fed.R.Civ.P. 56(e). Although a district court generally considers cross-motions for summary judgment separately in order to view the facts relied on by each in the light most favorable to the non-moving party, *see Heublein, Inc. v. United States,* 996 F.2d 1455, 1461 (2d Cir.1993), where, as here, the material facts underlying each party's motion for summary judgment are not in dispute, I decide the parties' cross-motions simultaneously.

### A. *"Earnings Credits" vs. Interest*

■ As a preliminary matter, the record in this case establishes that defendant does

---

**1.** Citations to "Def. Moving Br." refer to pages in Defendant's Memorandum in Support of its Motion for Summary Judgment. "Pl. Moving Br." refers to Plaintiff's Brief in Support of its Motion for Partial Summary Judgment. The parties' opposition briefs are cited as "Pl. Opp'n Br." and "Def. Opp'n Br.," respectively.

not earn interest on plaintiff's security deposit. Plaintiff's security deposit—along with the security deposits of all of defendant's New York lessees—was deposited into a non-interest bearing escrow account with Chase. (Walker Aff. ¶¶ 9–10) The funds in these accounts are not commingled with funds that defendant receives from any other source and on which it might earn interest. (*Id.;* Hoyt. Depos. at 43) Thus, the only issue in this case is whether defendant's failure to disclose its receipt of "earnings credits" based in part on plaintiff's security deposit violates the CLA.

Plaintiff resists this conclusion—despite the existence of these undisputed facts—by arguing that "earnings credits" are "interest equivalent remuneration" and therefore must be disclosed to plaintiff under the CLA. (Pl. Opp'n Br. at 4) Plaintiff's argument rests on the following two assumptions: first, that "earnings credits" are "equivalent" to interest; and second, that a failure to disclose the receipt of interest on a lessee's security deposit violates the CLA. Because I reject plaintiff's suggestion that "earnings credits" of the type at issue here are the same as interest, I need not assess the validity of plaintiff's second assumption—namely that the CLA applies to a lessor's failure to disclose the receipt of earned interest on a lessee's security deposit.[2]

Plaintiff likens "earnings credits" to interest because Chase awards them to defendant as a "percentage of the total dollar value" of its funds on deposit and because it does so at a rate that is "linked to a treasury bill index." (*Id.*) However, this is the extent of the similarities between "earnings credits" and interest. "Earnings credits"—unlike interest—are not paid in cash and can be used only to offset fees that Chase charges defendant to maintain its accounts. (Walker Aff. ¶¶ 13–14) "Earnings credits" which remain

after the fees that apply to defendant's accounts have been offset in a given year expire and may not be carried over to the following year. (*Id.*)

Moreover, nothing in the record suggests that "earnings credits" are transferrable or otherwise redeemable by anyone other than defendant. On the contrary, the fact that a substantial portion of defendant's "earnings credits" for 1996 expired unused is strong evidence that these credits are not so transferrable or redeemable. (5/30/97 Press Aff. Ex. N (1996 Chase billing summary)) These facts defeat plaintiff's claim that "earnings credits" are the same as interest.

Furthermore, "earnings credits" function merely as a device that Chase uses to reward its customers who maintain a minimum balance in their accounts. For example, if the aggregate average monthly balance in defendant's accounts falls below a certain level, defendant will not receive enough "earnings credits" to offset the fees Chase charges to maintain those accounts. If this occurs, defendant will be obligated to cover the remaining fees. Granting a fee exemption to customers based on the amount of funds that they keep on deposit is not the same as paying interest on those funds, at least as the term "interest" is normally understood. *See* Black's Law Dictionary 812 (6th ed. 1990) ("Interest is the compensation allowed by law or fixed by the parties for the use or forbearance of borrowed money.").

Finally, plaintiff cites no cases—and the court is aware of none—standing for the proposition that "earnings credits" are equivalent to interest. In fact, a California appeals court has noted that banks may offer "earnings credits" to depositors—at least to the extent that such credits are used to offset service fees—without violating a federal statute which prohibits certain banks from pay-

---

**2.** However, I note that this assumption is dubious in view of several recent holdings that a lessor's failure to disclose the receipt of interest on a lessee's security deposit does not violate the CLA. *See Lawson v. Bank One, Lexington, N.A.,* No. 96–334 (E.D.Ky. Sep. 19, 1997); *Tarnoff v. American Honda Fin. Corp.,* No. 96 C 6923, 1997 WL 461059 (N.D.Ill. August 7, 1997); *Wiskup v. Liberty Buick Co.,* 953 F.Supp. 958, 966 (N.D.Ill. 1997); *Gaydos v. Huntington Nat'l Bank,* 941 F.Supp. 669, 677 (N.D.Ohio 1996). *But see Steinmetz v. Toyota Motor Credit Corp.,* 963 F.Supp. 1294 (E.D.N.Y.1997) (dictum); *Werbosky v. Ford Motor Credit Co.,* No. 95–Civ–1876, 1996 WL 76133 (S.D.N.Y. Feb.22, 1996). Thus, although the majority of courts to consider the issue reject plaintiff's position, the Second Circuit has not yet decided this question and I decline to reach any issues that are not necessary to resolve the claims presented here.

ing interest on demand deposits. *See Van de Kamp v. Bank of America Nat'l Trust & Savs. Ass'n,* 204 Cal.App.3d 819, 843–844, 251 Cal.Rptr. 530, 539–40 (2 Dist.), *review denied,* (Nov. 30, 1988) (interpreting 12 U.S.C. § 371a (1994)); *see also* 12 C.F.R. § 217.2(d) (1997) ("A member bank's absorption of expenses incident to providing a normal banking function or its forbearance from charging a fee in connection with such a service is not considered a payment of interest."). Accordingly, defendant did not earn interest on plaintiff's security deposit.

B. *"Earnings Credits" and the CLA*

The issue presented in this case is whether defendant's failure to disclose that it receives "earnings credits" based in part on plaintiff's security deposit violates the CLA. Plaintiff argues that "earnings credits" constitute "charges payable by the lessee" or alternatively, "any security interest held or to be retained by the lessor," both of which must be disclosed to the lessee under § 1667a of the CLA. (Pl. Opp'n. Br. at 6) Defendant contends that "earnings credits" are not covered by the plain language of the statute. (Def. Moving Br. at 10)

The CLA was passed in 1976 as an amendment to the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.* (1994). The primary purpose of the CLA is to provide "meaningful disclosure of the terms of leases of personal property ... so as to enable the lessee to compare more readily the various lease terms available to him." 15 U.S.C. § 1601(b) (1994). Thus, the CLA requires that a lessor of personal property make certain disclosures to a lessee before the lease is consummated. 15 U.S.C. § 1667a (1994). However, in assessing a lessor's disclosure obligations under TILA, the Supreme Court has observed that: *"Meaningful* disclosure does not mean *more* disclosure. Rather it describes a balance between 'competing considerations of complete disclosure ... and the need to avoid [informational overload.]' " *Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 568, 100 S.Ct. 790, 798, 63 L.Ed.2d 22 (1980) (quoting S.Rep.No. 96–73, p. 3 (1979)) (emphasis in original) (alterations in original).

Section 1667a of the CLA requires that a lessor make, *inter alia,* the following disclosures to a lessee before the lease is consummated:

> (2) The amount of any payment by the lessee required at the inception of the lease;
>
> . . . .
>
> (4) The amount of other charges payable by the lessee not included in the periodic payments, a description of the charges and that the lessee shall be liable for the differential, in any, between the anticipated fair market value of the leased property and its appraised actual value at the termination of the lease, if the lessee has such liability;
>
> . . . .
>
> (8) A description of any security interest held or to be retained by the lessor in connection with the lease and a clear identification of the property to which the security interest relates;
>
> . . . .

15 U.S.C. § 1667a(2), (4), (8) (1994).

■ Plaintiff argues first that "earnings credits" must be disclosed as "other charges payable by the lessee" under § 1667a(4). (Pl. Opp'n Br. at 12) This argument is ridiculous. "A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin v. United States,* 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979). "Earnings credits" are not "charges" and they are not "payable by the lessee." 15 U.S.C. § 1667a(4).

Defendant's receipt of "earnings credits" from Chase is not a "charge[]" to the lessee because plaintiff does not have to pay anything under the lease as a result of these credits. Nor is plaintiff required to pay defendant any additional amount if defendant does not receive these credits from Chase. Moreover, "earnings credits" are readily distinguishable from disposition fees and "pickup" charges, both of which impose additional obligations on the lessee and therefore must be disclosed as "other charges payable by the lessee" under § 1667a(4). *See* 12 C.F.R. Pt. 213(4)(d), Supp. I (1997) (official staff com-

742

mentary); *see also Milhollin,* 444 U.S. at 561–62, 100 S.Ct. at 794–95 (the term "charges" as used in TILA refers to "specific penalty sums" imposed on lessee).

Although plaintiff loses the opportunity to earn interest and receive other benefits from his own bank when he transfers the security deposit to defendant, this is an obvious opportunity cost inherent in the concept of a deposit. Inherent costs of this nature are not "other charges payable by the lessee" that must be disclosed under the CLA. *See Gaydos,* 941 F.Supp. at 675 ("[a]lthough plaintiffs did not have use of the security deposit during the lease term, mere unavailability of funds is not, in my view, a 'charge' either within the common meaning of that term or the context of § 1667a(4).").

This obvious interpretation of "charges" in § 1667a(4) finds ample support in the case law. Two federal district courts have held that an automobile lessor's receipt of non-interest benefits based on a lessee's security deposit is not a "charge[]" that must be disclosed to a lessee under § 1667a(4). *See Steinmetz,* 963 F.Supp. at 1305–06 (dictum); *Demitropoulos v. Bank One Milwaukee, N.A.,* 953 F.Supp. 974, 985 (N.D.Ill.1997) ("*Demitropoulos II*"). In *Steinmetz,* Judge Spatt rejected the plaintiff's claim that the defendant's failure to disclose receipt of an "Earned Income Credit" used to "reduc[e] bank charges due on it accounts" is actionable under the CLA. 963 F.Supp. at 1306. Similarly, in *Demitropoulos II,* the district court declined to hold a lessor liable under the CLA for failing to disclose that a security deposit placed in a non-interest bearing escrow account prompted the bank to increase the lessor's credit line. 953 F.Supp. at 985. The court reasoned that § 1667a does not require a lessor to disclose "any hypothetical benefits the account might generate." *Id.* The express language of the statute—as well as the weight of the above authorities—compel the conclusion that § 1667a(4) does not cover a lessor's failure to disclose the receipt of "earnings credits" of the type at issue here.

■ Plaintiff argues next that "earnings credits" must be disclosed to a lessee as "any security interest held or to be retained by the lessor" under § 1667a(8). (Pl. Opp'n Br. at 6) Plaintiff claims that the phrase "any security interest" includes the refundable security deposit paid by a lessee at the beginning of the lease, as well as any interest or other "profits" that a lessor might generate from the fact that it holds such a deposit. (*Id.*)

Plaintiff's argument fails because it is contradicted by the express language of the CLA and is simply an invitation to "stretch these provisions beyond their obvious limits..." *Milhollin,* 444 U.S. at 562, 100 S.Ct. at 795. First of all, § 1667a(2) already requires a lessor to disclose "[t]he amount of any payment by the lessee required at the inception of the lease." This section's implementing regulations make it clear that § 1667a(2)—and not § 1667a(8)—requires disclosure of "[t]he total amount to be paid prior to or at consummation [of the lease] ... including any refundable security deposit..." 12 C.F.R. § 213.4(b) (1997). Plaintiff's claim that § 1667a(8) also requires disclosure of the security deposit as "any security interest held or to be retained by the lessor" ignores the plain language of the statute and the implementing regulations. *See Tarnoff,* 1997 WL 461059 at *6 (refundable security deposit not disclosable under § 1667a(8)); *Wiskup,* 953 F.Supp. at 965 (same); *Gaydos,* 941 F.Supp. at 676–77 (same).

However, even if § 1667a(8) requires disclosure of the security deposit, defendant's receipt of "earnings credits" is not covered by the term "any security interest." Once again, the implementing regulations define "security interest" as "any interest in property that secures the payment or performance of an obligation." 12 C.F.R. § 213.2(*o*) (1997). A security deposit arguably "secures the payment or performance of an obligation" under the lease, but defendant's receipt of "earnings credits" from Chase simply does not serve this same function.

As noted, Chase's practice of awarding "earnings credits" functions essentially as a minimum balance requirement for defendant's accounts with Chase. Chase does not award these credits to secure the performance of any third parties with whom defendant might have a lease or other agreement.

Nor does the performance—or non-performance—of third parties under any such agreement affect defendant's ability to use these credits to offset fees imposed by Chase. For these reasons, "earnings credits" do not qualify as "any security interests" held by the lessor under § 1667a(8). *See Steinmetz,* 963 F.Supp. at 1305–06 (dictum); *see also Demitropoulos II,* 953 F.Supp. at 985.

The conclusion that "earnings credits" are not covered by the CLA also is consistent with the "implicit character of the statutory regime." *Milhollin,* 444 U.S. at 560, 100 S.Ct. at 794. The purpose of the CLA is to require a lessor to disclose as much information as is necessary to "enable the lessee to compare more readily the various lease terms available to him." 15 U.S.C. § 1601(b) (1994). In other words, the disclosure provisions of this statute are designed to prevent a lessor from unfairly surprising a lessee by imposing additional charges or liabilities on him after the lease is consummated. *See Wiskup,* 953 F.Supp. at 965.

Here, defendant's failure to disclose its receipt of "earnings credits" neither caused unfair surprise to plaintiff nor failed to provide him with sufficient information to "compare more readily the various lease terms available to him." 15 U.S.C. § 1601(b). The lease agreement emphatically informed plaintiff that he would not earn interest on the security deposit. (Compl.Ex. A.¶ 30) Thus, plaintiff knew at the time he signed the lease that the most he could expect to receive back from defendant at the end of the lease term was $750.00—the amount he put down as a security deposit.

That plaintiff may have been surprised to discover that defendant receives "earnings credits" based in part on his security deposit—but which do not increase plaintiff's own obligations under the lease—is not unfair to plaintiff, nor are these credits the kind of surprise charges that the CLA was designed to remedy. *See Wiskup,* 953 F.Supp. at 965. At most, disclosing the "earnings credits" would have allowed plaintiff to shop for a lease that denied such benefits to the lessor. However, the statute was not meant to facilitate plaintiff's *schadenfreude.* The disclo-

sure that interest would not be paid on the security deposit gave plaintiff enough information to allow him to compare defendant's lease with that of other potential lessors in order to make an informed decision about which lessor to choose. That fulfills the primary purpose of the CLA.

### C. The Werbrosky and Demitropoulos Decisions

Finally, plaintiff relies on two cases involving an automobile lessor's failure to disclose receipt of interest on a lessee's security deposit in support of its claim that defendant's failure to disclose receipt of "earnings credits" is actionable under the CLA. *See Werbosky v. Ford Motor Credit Co.,* No. 95–CV–1876, 1996 WL 76133 (S.D.N.Y.1996); *Demitropoulos v. Bank One Milwaukee, N.A.,* 924 F.Supp. 894 (N.D.Ill.1996) ("*Demitropoulos I*"). Plaintiff's reliance on these decisions is misplaced as neither of these cases applies here.

The holdings in both *Werbosky* and *Demitropoulos I* are premised exclusively on a lessor's failure to disclose that it receives interest on a lessee's security deposit. In *Werbosky,* Judge Duffy held that the defendant violated § 1667a by failing to disclose that it earned "profits" on the plaintiff's security deposit. 1996 WL 76133 at *2. Although the court uses the term "profits" to describe what the defendant gained from the security deposit, Judge Duffy's holding in *Werbosky* is based solely on the defendant's receipt of earned "profits", *i.e.* interest actually paid to the defendant. *Id.* at *1 ("Ford Credit allegedly earned profits on investments of the security deposit, and did not pay the profits to Plaintiff.") Thus, *Werbosky* turns on an issue which is not presented here: a lessor's receipt of earned interest on a lessee's security deposit.

The district court's holding in *Demitropoulos I* was limited even more expressly to the defendant's receipt of earned interest. In that opinion, the Court denied a motion to dismiss the plaintiff's § 1667a claim based on the defendant's failure to disclose its practice of "retaining interest earned on [lessees'] security deposits." 924 F.Supp. at 897–98. However, when it became clear that the de-

fendant had not in fact earned interest on plaintiff's security deposit, the Court granted the defendant's motion for summary judgment. *See Demitropoulos II,* 953 F.Supp. at 985. In that opinion, the Court confirmed the limits of its previous holding by rejecting the plaintiff's fall-back position. The plaintiff had argued that the defendant was still liable under § 1667a because it failed to disclose that it receives an enhanced line of credit from the bank where plaintiff's security deposit is held. *Id.* As noted previously, the *Demitropoulos II* Court specifically refused to extend the CLA to create liability for any "hypothetical benefits the account might generate" beyond the payment of interest on a lessee's security deposit. *Id.; See also Steinmetz,* 963 F.Supp. at 1305–06 (dictum). Because *Werbosky* and *Demitropoulos* involve a lessor's failure to disclose the receipt of earned interest, both are distinguishable.

Furthermore, the district courts in both cases focused primarily on the question of whether the UCC imposes a substantive duty on lessors to remit to lessees interest earned on security deposits. *See Werbosky,* 1996 WL 76133 at *1; *Demitropoulos I,* 924 F.Supp. at 896–898. In each case, the Court found that such a duty exists under state law, and then concluded, *a fortiori,* that a breach of this duty necessarily creates liability for a lessor's failure to disclose the receipt of earned interest under the CLA. *See Werbosky,* 1996 WL 76133 at *2; *Demitropoulos I,* 924 F.Supp. at 898. The approach taken by the district courts in *Werbosky* and *Demitropoulos I* has been criticized, *see Tarnoff,* 1997 WL 461059 at *7; *Wiskup,* 953 F.Supp. at 964, and I have likewise declined to follow that approach here. Because the plain language of § 1667a does not require disclosure of "earnings credits," defendant's motion for summary judgment on plaintiff's CLA claim is granted.

### III.

Because defendant is entitled to summary judgment on plaintiff's CLA claim, I must now consider whether to exercise jurisdiction over plaintiff's remaining state-law claims. Although plaintiff's only federal claim has been dismissed, and diversity jurisdiction is likewise unavailable,[3] the court has the authority to exercise pendent jurisdiction over plaintiff's state-law claims because they are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a) (1994).

■ However, a district court need not exercise pendent jurisdiction under certain circumstances. One such circumstance arises when the court has "dismissed all claims over which it has original jurisdiction. . . ." 28 U.S.C. § 1367(c)(3) (1994); *see also United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). "[A]bsent exceptional circumstances," a district court should "abstain from exercising pendent jurisdiction when federal claims in a case can be disposed of by summary judgment . . . ." *Walker v. Time Life Films, Inc.,* 784 F.2d 44, 53 (2d Cir.), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2278, 90 L.Ed.2d 721 (1986); *Morse v. University of Vermont,* 973 F.2d 122, 127 (2d Cir.1992) ("in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.").

■ Here, the exercise of jurisdiction over plaintiff's state-law claims is discretionary because plaintiff's only federal claim has been dismissed. Considering the short duration of this lawsuit,[4] that trial of this action is not yet imminent, and the predominance—as well as novelty—of the state-law issues, I decline to exercise pendent jurisdiction over these claims. Accordingly, plaintiff's state-law claims are dismissed for lack of subject matter jurisdiction. Plaintiff's motion to cer-

---

**3.** Both plaintiff and defendant are citizens of New York State. (Compl.¶¶ 16–17)

**4.** This action was commenced on September 10, 1996 and all motions were fully submitted by July 30, 1997.

tify this lawsuit as a class action is denied as moot.[5]

\* \* \* \* \* \*

For the reasons stated above, defendant's motion for summary judgment is granted as to plaintiff's CLA claim. Plaintiff's motion for partial summary judgment is denied and plaintiff's remaining state-law claims are dismissed for lack of subject matter jurisdiction. Plaintiff's motion to certify this lawsuit as a class action is denied as moot.

SO ORDERED.

---

**5.** A district court has discretion to decide a motion for summary judgment before ruling on a plaintiff's motion to certify a lawsuit as a class action. *Christensen v. Kiewit–Murdock Inv. Corp.*, 815 F.2d 206, 214 (2d Cir.), *cert. denied*, 484 U.S. 908, 108 S.Ct. 250, 98 L.Ed.2d 209 (1987). This procedure is particularly appropriate where, as here, the defendant makes a specific request that the court rule on its motion for summary judgment before deciding the class certification issue. *See Cowen v. Bank United of Texas, FSB*, 70 F.3d 937, 941–42 (7th Cir.1995); *Wright v. Schock*, 742 F.2d 541, 544 (9th Cir. 1984).