**David C. TURNER, on behalf of himself and all others similarly situated, Plaintiff–Appellant,**

v.

**GENERAL MOTORS ACCEPTANCE CORP., Defendant–Appellee.**

No. 97–9492.

United States Court of Appeals, Second Circuit.

Argued Sept. 25, 1998.

Decided June 17, 1999.

452

Roger W. Kirby, Kaufman, Malchman, Kirby & Squire, New York, New York (Ira

M. Press, Kaufman, Malchman, Kirby & Squire, of counsel), for Plaintiff–Appellant.

Thomas D. Goldberg, Day, Berry & Howard, Stamford, Connecticut (Deborah S. Gordon, Day, Berry & Howard, of counsel), for Defendant–Appellee.

Before: WINTER, Chief Judge, and MESKILL and CALABRESI, Circuit Judges.

WINTER, Chief Judge:

David C. Turner appeals from Judge Mukasey's adverse grant of summary judgment. Turner's complaint alleged that General Motors Acceptance Corp. ("GMAC") violated the Consumer Leasing Act ("CLA"), 15 U.S.C. §§ 1667–1667f, the Uniform Commercial Code ("UCC"), and New York's General Obligations Law ("GOL") by profiting from funds held as security deposits under auto leases. We affirm.

## BACKGROUND

On September 25, 1995, Turner entered into a standard auto-leasing agreement with M & S Chevrolet, Inc. of Highland, New York, under which he leased a 1995 Chevrolet Geo Prizm. Pursuant to the lease, Turner posted a refundable $750 security deposit with the dealership. Paragraph 30 of the lease provided:

> SECURITY DEPOSIT. A refundable security deposit may be part of the payment you make when you sign this Lease. We will deduct from the security deposit any amounts you owe under this Lease and do not pay. *We will not pay you interest on the security deposit.* After the end of this Lease, we will refund to you any part of the security deposit that is left.

(emphasis added). M & S subsequently assigned its interest in the lease, including Turner's security deposit, to GMAC.

GMAC generally places security deposits received in the course of its nation-wide business in non-interest bearing local de-

positary accounts. When the funds in such local depositary accounts exceed an established minimum balance, GMAC places the excess into non-interest bearing regional or national accounts, which it utilizes for cash management purposes. However, with respect to security deposit funds posted in connection with leases governed by New York's GOL, GMAC follows special procedures. GOL § 7–101 requires a lessor to hold security deposit funds in trust for the benefit of the lessee. With respect to such deposits, GMAC places them in one of three non-interest bearing escrow accounts maintained with Chase Manhattan Bank specially for this purpose. There are at all times sufficient funds in such accounts to cover GMAC's security deposit liabilities under all leases governed by the GOL.[1] Although the escrow accounts into which GMAC places such security deposit funds are non-interest bearing, GMAC receives "earnings credits" from Chase, which can offset other financing charges it may incur. GMAC does not disclose to lessees the nature of its banking relationship with Chase.

Turner's complaint alleged that GMAC, by failing to disclose its receipt of earnings credits on lessee security deposit funds, violated, *inter alia*, CLA Sections 1667a(4) and 1667a(8), 15 U.S.C. §§ 1667a(4) & (8). Section 1667a(4) requires lessors to disclose "other charges payable by the lessee" that are neither payable at the inception of the lease nor included in the periodic payments pursuant to the lease. Section 1667a(8) requires lessors to describe "any security interest held or to be retained by the lessor in connection with the lease." Turner contends principally that the earnings credits GMAC receives belong to lessees under state law and thus that it must

disclose its retention of those credits. Turner further contends that GMAC's failure to remit its earnings credits to lessees constitutes a charge "payable by the lessee" but not disclosed by GMAC, in violation of the CLA. Finally, Turner contends that GMAC's failure to remit such funds to lessees violates the UCC and the GOL and that its commingling of lessee security deposit funds violates the GOL.

The district court granted GMAC's motion for summary judgment as to Turner's CLA complaint and declined to exercise supplemental jurisdiction over Turner's remaining state law claims. *See Turner v. General Motors Acceptance Corp.*, 980 F.Supp. 737, 744 (S.D.N.Y.1997). The court reasoned that Turner's CLA claim "rests on the following two assumptions: first, that 'earnings credits' are 'equivalent' to interest; and second, that a failure to disclose the receipt of interest on a lessee's security deposit violates the CLA." *Id.* at 740. Because he held that earnings credits are not the same as interest, Judge Mukasey did not reach the second question—namely, whether a failure to disclose the receipt of interest on security deposit funds would constitute a violation of the CLA. He noted, however, that this assumption is "dubious." *Id.* at n. 2.

DISCUSSION

We review *de novo* a district court's grant of summary judgment. *See Beatie v. New York*, 123 F.3d 707, 710 (2d Cir. 1997). Summary judgment is appropriate if the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). In determining whether

---

1. Prior to its recent amendment, GOL § 7–101 permitted security deposits to be placed in non-interest bearing accounts. *See Stuarco, Inc. v. Slafbro Realty Corp.*, 30 A.D.2d 80, 289 N.Y.S.2d 883, 885 (1968). The New York legislature amended Section 7–101 in 1997; it now provides that security deposits of $750 or more pursuant to leases of at least 120 days in length must be placed in interest-bearing accounts but expressly permits the commingling of multiple security deposits in a single trust account. *See* N.Y. Gen. Oblig. Law § 7–101.1–a (McKinney 1999). Turner's case was brought under the former version of this provision; there is no allegation that GMAC has failed to comply with the statute as amended.

summary judgment is appropriate, the district court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor. *See Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir.1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### (a) *Provisions of the CLA*

■ The CLA was enacted in 1976 as an amendment to the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601. It extended TILA's credit disclosure requirements to consumer leases. Like the rest of the TILA, the CLA is a disclosure rather than regulatory statute. *See Johnson v. McCrackin–Sturman Ford, Inc.*, 527 F.2d 257, 262 (3rd Cir.1975) (TILA "provides for full disclosure of credit terms rather than regulation of the terms or conditions under which credit may be extended."); *accord, Brown v. Marquette Sav. & Loan Ass'n*, 686 F.2d 608, 612 (7th Cir.1982). Its primary purpose is to "assure a meaningful disclosure of the terms of leases ... so as to enable the lessee to compare more readily the various lease terms available to him." 15 U.S.C. § 1601(b). Because lease financing had become recognized as an alternative to credit financing and installment sales contracts, Congress also intended CLA disclosure requirements to "enable comparison of lease terms with credit terms where appropriate." *Id.* The CLA thus requires lessors of personal property subject to its provisions to make specified disclosures when a lease is entered into. *See* 15 U.S.C. § 1667a (consumer lease disclosures).[2]

Section 1667a of the CLA provides in pertinent part that:

Each lessor shall give a lessee prior to the consummation of the lease ... and in a clear and conspicuous manner the following information:

. . .

(2) The amount of any payment by the lessee required at the inception of the lease;

. . .

(4) The amount of other charges payable by the lessee not included in the periodic payments, [and] a description of the charges . . .;

. . .

(8) A description of any security interest held or to be retained by the lessor in connection with the lease and a clear identification of the property to which the security interest relates;

(9) The number, amount, and due dates or periods of payments under the lease and the total amount of such periodic payments;

. . .

15 U.S.C. § 1667a(2), (4), (8) & (9).

The CLA requires the Federal Reserve Board (the "FRB") to issue regulations "to update and clarify the requirements and definitions applicable to lease disclosures" and to publish "model disclosure forms to facilitate compliance with [the CLA]." 15 U.S.C. § 1667f(a)(1) & (b)(1). The FRB regulations are codified as "Regulation M."[3]

Regulation M clarifies CLA disclosure requirements in several respects material to this case. First, it defines Section 1667a(4)'s "other charges" that must be disclosed as:

[t]he total amount of other charges payable to the lessor, itemized by type and amount, that are not included in the periodic payments. Such charges include the amount of any liability the lease imposes upon the lessee at the end

---

**2.** The CLA applies to all leases for the use of "personal property" having a term "exceeding four months" that have a "total contractual obligation not exceeding $25,000." 15 U.S.C. § 1667(1). Neither party disputes that the CLA applies to Turner's lease.

**3.** This opinion's citations to provisions of Regulation M are to their current codification. The regulation has been recodified and slightly revised since this action was commenced, but, as appellant concedes, the revisions do not affect this action.

of the lease term; the potential difference between the residual and realized values referred to in paragraph (k) of this section is excluded.

12 C.F.R. § 213.4(d). Second, it excludes from the description of "security interest[s]" subject to disclosure any "security deposit disclosed under paragraph (b) of this section," 12 C.F.R. § 213.4(r), and requires instead that any "refundable security deposit" be itemized as an "[a]mount due at lease signing or delivery," 12 C.F.R. § 213.4(b). The "amount due at lease signing or delivery" provision states that "in motor-vehicle leases," the lessor "shall itemize how the amount due will be paid, by type and amount, including any net trade-in allowance, rebates, noncash credits, and cash payments in a format substantially similar to the model forms in appendix A of this part." *Id.*

Third, Regulation M requires that certain disclosures, including those covered by paragraphs (b) and (d) of Section 213.4, "shall be segregated from other information and shall contain only directly related information. . . . The[ir] headings, content, and format . . . shall be provided in a manner substantially similar to the applicable model form in appendix A of this part." 12 C.F.R. § 213.3(a)(2).[4] With respect to disclosures not required to be segregated, "[a]dditional information may be provided . . . but it shall not be stated, used, or placed so as to mislead or confuse the lessee or contradict, obscure, or detract attention from any disclosure required by this part." 12 C.F.R. § 213.3(b). A lessor "may include in the nonsegregated disclosures any state law disclosures . . . as long as . . . [they] are not used or placed to mislead or confuse or detract from any disclosure required by the regulation." Official Staff Commentary to Regulation M, 12 C.F.R. pt. 213, Supp. I (comment 3(b)(1)). Further, all required disclosures "must be presented in a way that does not obscure the relationship of the terms to each other." *Id.* (comment 3(a)–2).

In the Official Staff Commentary to Regulation M, the FRB states that "[g]ood faith compliance with this commentary affords protection from liability under section 130(f) of the [TILA]." 12 C.F.R. pt. 213, Supp. I (comment I–1). Section 130(f) protects lessors from civil liability for "any act done or omitted in good faith in conformity with any rule, regulation, or interpretation" by the FRB. 15 U.S.C. § 1640(f). This section makes clear that the TILA's good faith compliance protection applies not only to creditors but to lessors covered by the CLA as well.

### (b) *Turner's CLA Claims*

█ Turner's CLA claim is that his lease violates Section 1667a(4) "because it does not include the *de facto* charges imposed on the lessee by reason of GMAC's defalcation of the profits on the lessee's security deposits," (Compl.¶ 55), and Section 1667a(8) because it does not "disclose the additional security interest [GMAC] takes in the profits," (Compl.¶ 54). We reject both arguments.

As noted, section 1667a(4) requires lessors to disclose, in addition to charges payable at lease inception and the amounts of all periodic payments, the amount of "other charges *payable by the lessee.*" 15 U.S.C. § 1667a(4) (emphasis added). Regulation M modifies this disclosure by limiting it to charges "payable to the lessor," 12 C.F.R. § 213.4(d), and expressly requires disclosure of "the amount of any liability the lease imposes upon the lessee at the end of the lease term." *Id.*

█ "A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common

---

4. The Official Staff Commentary to Regulation M goes somewhat further, stating that "[t]he disclosures required to be segregated may contain only the information required or permitted to be included among the segregated disclosures." 12 C.F.R. pt. 213, Supp. I (comment 3(a)(2)–2).

meaning." *Perrin v. United States*, 444 U.S. 37, 42, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979). The ordinary meaning of these provisions would not entail a requirement to disclose earnings credits received by GMAC because the earnings credits are not "payable" by the lessee and do not constitute a "liability" imposed upon the lessee "at the end of the lease term." *See, e.g., Turner*, 980 F.Supp. at 741; *Gaydos v. Huntington Nat'l Bank*, 941 F.Supp. 669, 675 (N.D.Ohio 1996) ("[T]o construe interest earned on deposits as 'other charges payable' ... would require stretching § 1667a(4) 'beyond [its] obvious limit.'") (quoting *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 562, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980)); *Tarnoff v. American Honda Fin. Corp.*, 1997 WL 461059, at *6 (N.D.Ill. Aug.7, 1997) (quoting *Gaydos*). Indeed, whether GMAC earns earnings credits at all depends entirely on its relationship with Chase, and the amount of such earnings is a function of how GMAC manages its cash reserves. Apparently, all but one court to have considered this claim have come to this conclusion.[5]

Furthermore, as the CLA's statement of purpose and applicable FRB guidelines make clear, the "other charges" disclosure is meant "[t]o limit the amount of balloon payments in consumer lease transactions." 12 C.F.R. § 213.1(b)(2); *see also Wiskup v. Liberty Buick Co.*, 953 F.Supp. 958, 965 (N.D.Ill.1997) (Section 1667a(4) "[is] intended to prevent the lessor from unfairly surprising the lessee by imposing extra charges or liabilities on him."). Turner's

lease stated clearly that GMAC would not pay interest on his security deposit funds. It thus indicated in a "clear and conspicuous manner," 15 U.S.C. § 1667a, the amount he could expect to receive at the end of the lease[6] and provided all the information necessary to "enable [Turner] to compare lease terms with other leases." 12 C.F.R. § 213.1(b)(1).[7]

Turning to appellant's argument based on Section 1667a(8), that Section requires covered consumer leases to contain "[a] description of any security interest held or to be retained by the lessor ... and a clear identification of the property to which the security interest relates." However, Regulation M makes clear that any refundable security deposit must be disclosed as part of an itemized statement of the "[a]mount due at lease signing or delivery." 12 C.F.R. § 213.4(b). Consistent with this, Regulation M excludes from the description of "security interests" subject to disclosure any "security deposit disclosed under paragraph (b) of this section." 12 C.F.R. § 213.4(r). Several courts have concluded that the plain meaning of these provisions precludes appellant's claim. *See, e.g., Wiskup*, 953 F.Supp. at 965–66 (The FRB "has determined that the CLA disclosure requirements only pertain to the lessee's duties at the inception of the lease."); *Gaydos*, 941 F.Supp. at 677 ("Taken together, these ... provisions demonstrate that the security deposit collected from plaintiffs need be disclosed only once.").

---

5. *See, e.g., Wiskup v. Liberty Buick Co.*, 953 F.Supp. 958, 965 (N.D.Ill.1997); *Gaydos*, 941 F.Supp. at 675; *Tarnoff*, 1997 WL 461059, at *7 (following *Gaydos*); *In re Ford Motor Credit Co.*, 1998 WL 159051, at *3 (S.D.N.Y. Apr.1, 1998) (earning credits "are not 'other charges payable by the lessee'"). *But see Werbosky v. Ford Motor Credit Co.*, 1996 WL 76133, at *2 (S.D.N.Y. Feb.22, 1996) (1667a(4) "encompasses the profits at issue.").

6. Turner's right to the security deposit was, of course, subject to set-off against any amounts he failed to pay as required by the lease.

7. Because we hold that Section 1667a(4)'s terms and purpose preclude appellant's claim, we need not consider the broader statutory framework in addressing this argument. However, the discussion below of TILA's legislative history and Regulation M's prohibition on including additional information with the disclosures that must be segregated applies with full force to Turner's claim under Section 1667a(4) as well.

Appellant does not contest that Regulation M requires a refundable security deposit to be disclosed only once, as an "[a]mount due at lease signing or delivery." 12 C.F.R. § 213.4(b). Rather, he argues that for the purposes of the CLA, "security interest" "includes, but is not limited to, security interests under the [UCC]." 12 C.F.R. pt. 213, Supp. I (comment 2(o)). The UCC provides that, absent contrary agreement, "increase or profits" on "collateral" belong to the pledging party, but the secured party gains "additional security" therein. *See* N.Y. [UCC] Law § 9–207 (McKinney's 1998 Supp.).[8] Appellant thus contends that because the lessor's alleged additional security interest in the increase or profits on the initial security deposit is not disclosed as an "amount due at lease signing or delivery," it must be disclosed as a security interest under 12 C.F.R. § 213.4(r).

■ While agreeing with those courts to have considered this issue that Section 1667a(8) appears to foreclose this argument, we believe that this conclusion rests on inference rather than clear language. Where the language of the statute is not dispositive, we may "consider the implicit character of the statutory scheme." *Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 560, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980). In this instance, the statute's language and scheme, as well as its purpose and legislative history, undermine appellant's contention.

Although the TILA is a disclosure statute, its purpose is to require "meaningful disclosure," not "more disclosure." *Id.* at 568, 100 S.Ct. 790. Prior to its amendment in 1979, the TILA (which includes the CLA) was criticized for requiring disclosure forms that were "too lengthy and difficult to understand," as well as for ensnaring in litigation creditors who had "sincerely tried to comply with the act." S.Rep. No. 96, 96th Cong., 1st Sess. 2–3 (1978), U.S. Code Cong. & Admin. News at 280, 280–82, *reprinted in* 1979 WL 10376. In amending the TILA, Congress sought to address the "competing considerations of complete disclosure ... and the need to avoid providing so much information that the consumer is discouraged from studying it," *id.* at 3, as well as to "limit creditor civil liability for statutory penalties to only significant violations," *id.* at 2. The balance it struck meant "the consumer would be given somewhat less information" but would be protected from the risk of "informational overload." *Id.* at 3. Specifically with respect to the required "security interest" disclosure, the Senate Report noted that it was "simplified to eliminate the technical disclosure of the type of security interest taken." [9]

In furtherance of Congress's intent, Regulation M requires the segregation of key disclosures, including the amount due at consummation of the lease, the schedule and amount of periodic payments, and any other charges, *see* 12 C.F.R. § 213.3(a)(2),

8. Turner's argument presumes, *inter alia,* that the provision in the lease stating that GMAC will not pay interest on the security deposit is not an "agreement otherwise" within the meaning of UCC Section 9–207(2). Because we hold that the disclosures Turner seeks are not required under the CLA, state law notwithstanding, we need not determine whether the UCC applies at all, let alone whether GMAC's practices would violate it.

9. Indeed, the Senate Report makes clear that the security interest disclosure requirement was intended to shed light on the type of cross-collateralization provisions sometimes found in consumer installment sales agreements. It provides:

> When a security interest is being taken in *property purchased* as part of the credit transaction, this section requires a statement that a security interest has been or will be taken in the property purchased. When a security interest is being taken in *property not purchased* as part of the credit transaction, the committee intends this provision to require a listing by item or type of the property securing the transaction, but not a listing of related or incidental interests in the property.
>
> S. Rep. No. 73, *supra,* at 2–3 (emphasis added).

and prohibits the inclusion therewith of additional information, *see* 12 C.F.R. pt. 213, Supp. I (comment 3(a)(2)–2). Additional information "may be provided" with disclosures not required to be segregated, including the security deposit disclosure, but not if the result may "confuse the lessee" or "detract attention from" the required disclosure. 12 C.F.R. § 213.3(b).

In light of the foregoing, Turner's argument fails. The disclosure he seeks is not only not required under the CLA but also is arguably forbidden by it. At best, the inclusion in a CLA-governed lease of a lengthy explanation of GMAC's banking relationship with Chase and the likelihood that GMAC will earn earnings credits would be technical and confusing and would "detract attention from" required disclosures. *Id.* How a lessor profits from money in its possession is simply irrelevant under the CLA so long as the cost to the consumer of the lease is clear. *See* S.Rep. No. 73, *supra,* at 13–14 (Congress amended the CLA to "restrict the scope of creditor civil liability ... to only those disclosures which are of *material importance in credit shopping.* The Committee believes this will eliminate litigation based on *purely technical violations* of the Act.") (emphasis added). Where a lease states, as here, that no interest will be paid on the security deposit, the actual cost is clear and comparison easy.

█ Moreover, even assuming, *arguendo,* that appellant's reading of the CLA were correct, a lessor's failure to disclose the receipt of interest or earnings credits would not give rise to liability under the Act. "Good faith compliance with [the FRB's] commentary [on regulation M] affords protection from liability" thereunder. 12 C.F.R. pt. 213, Supp. I (comment I–1). Further, proper use of the model forms published by the FRB represents *per se* compliance with the regulation. *See id.* (comment app. A–1) ("Although use of the model forms is not required, lessors using them properly will be deemed to be in compliance with the regulation."). Nota-

bly absent from Turner's briefs is any allegation that the disclosure sought is contemplated by the FRB's model lease disclosure form. Instead, he argues that the charges in the Model Lease Form are not comprehensive and that the disclosure sought should have been inserted in a blank space the form provides. This argument, however, would render meaningless the protection Regulation M and the model forms provide for creditors who seek in good faith to comply with the CLA's requirements, and we decline to adopt it. Since GMAC has followed the model form, then *a fortiori* it has acted in good faith compliance with Regulation M.

We therefore affirm.