**Nicholas SANZO, Plaintiff,**

v.

**UNIONDALE UNION FREE SCHOOL DISTRICT, Grand Avenue School, Defendants.**

**No. 02 CV 893(ADS)(MLO).**

United States District Court, E.D. New York.

Aug. 8, 2005.

Leeds, Morelli & Brown, P.C., by David Nevins, Esq., of Counsel, Carle Place, NY, for the Plaintiff.

Bond, Schoeneck & King, by Howard Miller, Esq., Of Counsel, Garden City, NY, for the Defendants.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

On February 26, 2002, Nicholas Sanzo ("Sanzo" or the "plaintiff") filed a complaint against his former employer, Uniondale Union Free School District ("District") and Grand Avenue School ("School") (collectively the "defendants") alleging that the defendants terminated his employment at the School because of his disability, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12117 (2005), and the New York Human Rights Law ("NYHRL"), N.Y. Exec. Law §§ 290–301 (2005). Presently before the Court is the defendants' motion for summary judgment to dismiss the amended complaint pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ.P.").

## I. BACKGROUND

The following facts are not in dispute, except where otherwise indicated. On August 19, 1998, the defendants hired Sanzo as head custodian of the Grand Avenue School. His main responsibilities included the maintenance, safety, and cleanliness of the entire building and the direct supervision of four custodians. During his six month probationary period, the plaintiff was disciplined in writing by the School's Principal for falling asleep on the job. In February 1999 his probationary period concluded, at which time the Principal recommended that the plaintiff be given a permanent appointment as head custodian. That recommendation was accepted, and on February 5, 1999, the plaintiff was appointed head custodian.

On August 3, 2000, the plaintiff's physician, Dr. Frank J. Amico, provided a letter to the School stating that "[Sanzo] is currently under treatment for narcolepsy. He is also being worked up for sleep apnea." On August 11, 2000, the School's Assistant Superintendent, Gene Levenstein responded to Dr. Amico's letter by inquiring about "the full extent of his problem as it is imperative that I have a record of how his illness may affect his job performance." On August 17, 2000, Dr. Amico responded that Sanzo would need to be evaluated by a sleep disorders clinic before the full extent of his illness could be known. On September 13, 2000, Mr. Levenstein again wrote to further inquire about Sanzo's condition and his ability "to perform the essential functions of his job as a head custodian (i.e., lifting and moving

various equipment), with or without reasonable accommodation." On October 3, 2000, Dr. Amico responded and stated that Sanzo could perform his duties as head custodian.

On December 12, 2000, the District's Superintendent of Schools, Dr. Mary Cannie, initiated disciplinary charges against the plaintiff pursuant to Section 75 of the Civil Service Law. The disciplinary charges included nineteen specifications of poor performance and misconduct, none of which stated that the plaintiff slept on the job. According to the defendants, Dr. Cannie was not aware that the plaintiff fell asleep on the job or was otherwise being treated for a sleeping disorder.

In February 2001, an independent hearing officer, Valerie Marvin, Esq., held a hearing with regard to the disciplinary charges preferred against the plaintiff. At the hearing, the plaintiff was represented by a union attorney. During the four-day hearing a transcript of 495 pages was recorded; twelve witnesses testified; the District introduced twenty-two exhibits; and the plaintiff introduced ten exhibits. After the hearing, the plaintiff submitted a forty-three page post-hearing brief and the District submitted a forty-nine page post-hearing brief.

On March 28, 2001, Hearing Officer Marvin issued a twenty-seven page report (the "Marvin Report") in which she found the plaintiff guilty of fifteen of the nineteen specifications. In particular, specification one related to an incident on October 8, 1999 where Sanzo failed to properly respond to and address sparks flying from an outlet that caused a plug to melt down and char the wall. Other specifications related to incidents of misconduct and incompetence. As a penalty the Hearing Officer recommended that Sanzo be terminated from his employment at the School. On April 2, 2001, the District's Board of Education accepted the recommendation and terminated the plaintiff's employment effective April 4, 2001.

On or about July 9, 2001, Sanzo filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). After an investigation, on December 19, 2001, the EEOC found no probable cause of discrimination.

At or about the time of the disciplinary hearings, Sanzo attended a sleep disorder clinic. In August 2001, the plaintiff claims he was formally diagnosed with narcolepsy, a disorder characterized by sudden and uncontrollable attacks of deep sleep. The parties dispute the actual date of the formal diagnosis.

## II. DISCUSSION

### A. The Summary Judgment Standard

Summary judgment is appropriate if the record "shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2550, 91 L.Ed.2d 265 (1986); *Wilkinson v. Russell*, 182 F.3d 89 (2d Cir.1999); *Turner v. General Motors Acceptance Corp.*, 180 F.3d 451 (2d Cir. 1999); *In Re Blackwood Associates, L.P.*, 153 F.3d 61, 67 (2d Cir.1998) (citing Fed. R.Civ.P. 56(c)). In deciding a summary judgment motion, the district court must resolve all ambiguities and draw all reasonable inferences in the light most favorable to the opposing party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14 (1986); *Amato v. City of Saratoga Springs*, 170 F.3d 311, 322 (2d Cir.1999) (citing *Skubel v. Fuoroli*, 113 F.3d 330, 334 (2d Cir.1997)); *Castle Rock Entm't, Inc. v. Carol Pub. Group, Inc.*, 150 F.3d 132, 137 (2d Cir.1998) (citing *Garza v. Marine Transp. Lines, Inc.*, 861

F.2d 23, 26 (2d Cir.1988)). Disputed facts that are not material to the issue at hand will not defeat summary judgment. *See Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of judgment." *Id.* A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If there is evidence in the record, including affidavits, exhibits, interrogatory answers, and depositions, as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. *See Lane v. New York State Electric & Gas Corp.,* 18 F.3d 172, 176 (2d Cir.1994).

Notably, "the trial court's task at the summary judgment motion state of litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to decide them. Its duty, in short, is confined at this point to issue finding, it does not extend to issue resolution." *Gallo v. Prudential Residential Servs. Ltd.,* 22 F.3d 1219, 1224 (2d Cir.1994); *see Donahue v. Windsor Locks Board of Fire Commissioners,* 834 F.2d 54, 57 (2d Cir.1987) (holding that on a motion for summary judgment, the court "cannot try issues of fact; it can only determine whether there are issues to be tried").

## B. The Americans with Disabilities Act and the New York Human Rights Law

■ The ADA prohibits an employer from discriminating against an employee "because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a)(2005). The ADA's threshold test is also applied to disability discrimination claims under the NYHRL. *See Parisi v. Coca–Cola Bottling Co.,* 995 F.Supp. 298, 301 (E.D.N.Y.1998); *Mohamed v. Marriott Int'l, Inc.,* 905 F.Supp. 141, 156–57 (S.D.N.Y.1995); *Fitzgerald v. Alleghany Corp.,* 904 F.Supp. 223, 229–30 (S.D.N.Y.1995).

■ A plaintiff alleging employment discrimination under the ADA bears the initial burden of establishing a prima facie case of discriminatory discharge. In order to establish a prima facie case, a plaintiff must show that: (1) his employer is subject to the ADA; (2) he has a disability under the meaning of the ADA; (3) he could perform the essential functions of his job, with or without reasonable accommodation; and (4) his disability was a factor that led to his termination. *Ryan v. Grae & Rybicki, P.C.,* 135 F.3d 867, 869 (2d Cir.1998) (citing *Heilweil v. Mount Sinai Hosp.,* 32 F.3d 718, 722 (2d Cir.1994) and *Bates v. Long Island R.R. Co.,* 997 F.2d 1028, 1035 (2d Cir.1993)). "The burden that such a plaintiff must meet in order to defeat summary judgment at the prima facie stage is 'not onerous,' and has been described as 'de minimus.'" *Howley v. Town of Stratford,* 217 F.3d 141, 150 (2d Cir.2000) (quoting *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) and *Chambers v. TRM Copy Ctrs. Corp.,* 43 F.3d 29, 37 (2d Cir.1994)).

■ Once the plaintiff alleges a prima facie case, the burden shifts to the employer to rebut the presumption of discrimination by articulating a legitimate nondiscriminatory reason for the termination or adverse employment action. *Bickerstaff v. Vassar Coll.,* 196 F.3d 435, 446 (2d Cir. 1999) (citations omitted). The employer merely needs to "explain what he has

done." *Burdine,* 450 U.S. at 256, 101 S.Ct. 1089 (citations omitted). Should the employer carry this burden, the question then turns to whether the plaintiff can prove that the employer's proffered reason was not the true reason or the only reason for the termination and was rather a pretext, masking discriminatory intent. *See Bickerstaff,* 196 F.3d at 446.

■ "Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all time with the plaintiff.'" *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142, 120 S.Ct. 2097, 2106, 147 L.Ed.2d 105 (2000) (quoting *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089, 67 L.Ed.2d 207). If the plaintiff cannot prove intentional discrimination motivated by his disability, then the defendants are entitled to summary judgment.

■ Similarly, New York courts use the same *McDonnell Douglas* framework to analyze cases of employment discrimination under the NYHRL. *See North Shore Univ. Hosp. v. Rosa,* 86 N.Y.2d 413, 633 N.Y.S.2d 462, 464, 657 N.E.2d 483 (1995) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)) (additional citations omitted); *Reeves v. Johnson Controls World* Servs., 140 F.3d 144, 156 n. 9 (2d Cir.1998).

## C. Analysis of the Plaintiff's Claim

■ Taking the facts in light most favorable to the plaintiff, the Court finds that the plaintiff is able to meet the minimal threshold to establish a prima facie case of discrimination. Nevertheless, even if the plaintiff is able to establish a prima facie case for employment discrimination, the defendants have articulated compelling legitimate and nondiscriminatory reasons for the plaintiff's termination. In this regard, the Court finds that the determinations of the Marvin Report were sufficient legitimate non-discriminatory grounds to terminate the plaintiff's employment. *See, e.g., Collins v. New York City Transit Auth.,* 305 F.3d 113, 119 (2d Cir.2002) (finding that the arbitral decision by an "undisputedly independent, neutral, and unbiased adjudicator that had the power to prevent the termination" was "highly probative of the absence of discriminatory intent in that termination."); *see also Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 60 n. 21, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974) (noting that the probative weight of a arbitral decision is determined by the court's discretion on a case-by-case basis).

■ As head custodian, Sanzo's failure to properly respond to and address sparks flying from a school outlet that caused a plug to melt down causing the wall to be charred, is, by itself, justification for his termination and is a legitimate and nondiscriminatory reason for termination. The other established specifications related to incidents of misconduct and incompetence only further provide legitimate nondiscriminatory reasons for his termination. Though the plaintiff characterizes some of the incidents described in the specifications as minor infractions, this court finds that the employer was fully justified in terminating the plaintiff. Courts have found even less convincing reasons than the ignoring of a potential fire hazard in an elementary school to be legitimate and nondiscriminatory reasons for termination. *See e.g., Bogdan v. New York City Transit Auth.,* No. 02 Civ. 09587 (GEL), 2005 WL 1161812, at *8, 2005 U.S. Dist. LEXIS 9317, at *24 (S.D.N.Y. May 13, 2005) (multiple complaints of poor job performance as legitimate, nonretaliatory reasons for employee's termination); *Costello v. St. Francis Hosp.,* 258 F.Supp.2d 144, 155 (E.D.N.Y.2003) (falsification of a time

sheet constitutes legitimate, nondiscriminatory reason for termination employee); *Myrick v. New York City Employees Ret. Sys.*, No. 99 Civ. 4308(GEL), 2002 WL 868469, 2002 U.S. Dist. LEXIS 8032 (S.D.N.Y. May 2, 2002) (incompetence and misconduct in the form of failure to meet a deadline in modifying an automated system; failure to submit update reports; and failure to produce project working document are legitimate, nondiscriminatory reasons for termination).

■ On the other hand, the plaintiff, did not provide sufficient proof of a pretext to discriminate. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 148–49, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). The plaintiff relies on *Collins v. New York City Transit Authority* to argue that the Marvin Report was "wrong as a matter of fact" because it did not consider "new evidence not before the tribunal"—the plaintiff's sleeping disorder— as the reason behind the incidents of misconduct and incompetence. *See Collins v. New York City Transit Auth.*, 305 F.3d 113, 119 (2d Cir.2002). According to *Collins*, to survive a motion for summary judgment where a decision follows an evidentiary hearing and is based on substantial evidence, the Title VII plaintiff must present strong evidence that the decision was wrong as a matter of fact, for example new evidence not before the tribunal, or that the impartiality of the proceeding was somehow compromised. *Id.* at 119.

■ However, here the plaintiff does not proffer "strong evidence" that the decision was "wrong as a matter of fact." The plaintiff contends that the decision was wrong because the Hearing Officer did not consider the plaintiff's sleeping disorder and claims that the Hearing Officer was not impartial. None of the specifications for which he was found guilty have anything to do with his sleeping disorder.

Moreover, consideration of the plaintiff's sleeping disorder does not constitute "new evidence" because the Hearing Officer was aware of the sleeping disorder and even took note that the plaintiff failed to raise the sleeping disorder as a defense.

As stated above, the plaintiff failed to establish that the reasons proffered by the defendants are untrue or a pretext for discriminatory intent. Also, the plaintiff offers no evidence that would give rise or support an inference of discrimination other than his own conclusory allegations. *See Vanhorne v. N.Y. City Transit Auth.*, 273 F.Supp.2d 209, 214 (E.D.N.Y.2003) ("[a] plaintiff's personal conclusory assumptions as to the reasoning behind a disciplinary decision are insufficient to support such an inference."). He contends that the Section 75 process of a four day hearing where he was defended by a union attorney; where thirty-two exhibits were offered and twelve witnesses testified, was all a pretext for discrimination. His reasoning is particularly unconvincing given that the plaintiff had passed his probationary period despite his sleeping on the job.

Accordingly, the defendants' motion for summary judgment, with regard to both the ADA and NYHRL claims, is granted.

### III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED,** that the defendants' motion for summary judgment under Rule 56 of the Fed.R.Civ.P. is **GRANTED** dismissing the complaint in its entirety; and it is further

**ORDERED,** that the Clerk of the Court is directed to close this case.

**SO ORDERED.**