**Jealetta BRINSON, Plaintiff,**

v.

**NEW YORK CITY TRANSIT AUTHORITY, Defendant.**

**No. 96 CV 4810(NG).**

United States District Court, E.D. New York.

Aug. 13, 1999.

Stephen C. Jackson, New York City, for plaintiff.

Kenneth Howard Schiffrin, New York City Transit Authority, Brooklyn, New York, for defendant.

## MEMORANDUM AND ORDER

GERSHON, District Judge.

Plaintiff Jealetta Brinson brings this action against her former employer the New York City Transit Authority ("Transit Authority"), alleging that her termination from employment was the result of discrimination on the basis of her race in violation of: 1) Title VII of the Civil Rights Act of 1964 ("Title VII") as amended, 42 U.S.C. §§ 2000e *et seq.*; 2) 42 U.S.C. § 1981; and 3) the New York State Human Rights Law ("HRL"). Defendant moves for summary judgment pursuant to Federal Rule of Civil Procedure 56(b) dismissing plaintiff's claims in their entirety. Defendant argues that plaintiff has failed to establish a prima facie case of discrimination and that, even if she can, plaintiff cannot show that her termination following a comprehensive arbitration award was pretextual.

### Facts

Unless otherwise indicated, the following facts are undisputed.

Plaintiff Jealetta Brinson, an African-American woman, was hired by defendant New York City Transit Authority on April 23, 1984 for the position of Bus Operator. During her eleven years in this position, plaintiff received six warnings, four reprimands, and fifteen suspensions ranging from one to thirty days each. Not including two 1995 incidents which immediately preceded her termination, plaintiff accumulated twenty-six citations in total for occurrences ranging from arriving at bus stops ahead of or behind schedule, failure to wear a tie, by-passing passengers waiting on the street, being "AWOL," and being "reckless" and "insubordinate." Plaintiff received several of these citations almost every year that she was employed by defendant.

In June 1995, the Transit Authority charged plaintiff with Gross Insubordination and By-Passing Passengers in connection with a June 5, 1995 incident, and with Being Discourteous to a Member of the Riding Public and Unsafe Operation in connection with a January 9, 1995 incident. Defendant disciplined plaintiff by suspending her without pay beginning June 6, 1995 and sought to terminate her. The Transit Authority's disciplinary actions are governed by its collective bargaining agreement with plaintiff's union, the Transport Workers Union, Local 100. Section 2.1C of the agreement describes a multi-step administrative process for disciplinary actions that culminates in arbitration before a Tripartite Arbitration Board ("TAB") whose decision is final and binding.

Plaintiff sought arbitration of her proposed dismissal before the TAB, as provided under the collective bargaining agreement. The TAB held hearings in July, August and October 1995 regarding the two charges, and issued an opinion and award on November 7, 1995 sustaining the Transit Authority's decision to terminate plaintiff. The opinion states in relevant part:

> With respect to [the June 5, 1995 incident] the Authority offered a number of highly credible witnesses that indicated that the grievant was insubordinate, obscene, and extremely threatening toward a member of supervision on the day in question. The testimony of the Authori-

ty witnesses was detailed, consistent, and altogether impressive. Dispatcher Natale's testimony concerning her apprehension when confronted by the grievant was particularly compelling. . . .

For her part, the grievant's testimony concerning this incident was simply not believable. The grievant, while off duty, went out of her way to confront Natale and ridicule her in front of other Authority personnel and members of the public. If the grievant took issue with the violation that she was issued, there was an appropriate procedure to deal with the issue, to wit, the grievance procedure. Instead, the grievant apparently resorted to a personal confrontation with a member of supervision.

Overall, the majority [1] found the Authority witnesses in this matter to offer credible testimony regarding the grievant's actions on the day in question. The grievant's account of the incident was simply not credible.

With respect to the second charge, the majority found the passenger complainant in this case, Mr. Christopher Williams, to be a highly credible witness. The majority can think of no plausible reason why Mr. Williams, a disinterested third party, would fabricate his account of the incident. Williams testified in a credible fashion that the grievant was not only rude to him, but also to other members of the riding public. Lastly, Williams' testimony was consistent with his letter of complaint which he forwarded to the Authority a short time after the actual incident. The grievant's blanket denial in this matter was not credible.

Based on the foregoing, the majority finds that the Authority has met its burden in both matters and accordingly, the charges are upheld and the grievances denied.

With respect to the proposed penalty, a review of the grievant's record reveals a significant number of operational violations during her tenure with the Authority including a prior thirty (30) day suspension for insubordination which occurred in 1994. Unfortunately, the grievant's conduct in the instant matters appears to be part of a disturbing pattern. The grievant's inexcusable conduct in both matters, coupled with her prior record supports the proposed penalty of dismissal.

Tripartite Arbitration Board Opinion and Award dated November 7, 1995.[2]

The second charge referred to in the Opinion and Award arose when on January 9, 1995, Christopher Williams, a passenger, wrote a letter to the Transit Authority accusing plaintiff of being unacceptably rude and threatening to him that day. According to the letter, before boarding the bus, Mr. Williams had attempted to ask plaintiff from the rear door of the bus if he was on the correct bus line, to which she allegedly responded by yelling at him either to get on or get off the bus and then pulling away while the door remained ajar. After Mr. Williams sat down and witnessed plaintiff acting discourteously to another passenger, he decided to confront plaintiff and asked her for her badge number, as he did not see her wearing her badge. Plaintiff responded by insisting that she was wearing her badge, and that, gesturing to her inside jacket pocket, "I'm also wearing something else you can't see." Mr. Williams interpreted the gesture as intended by plaintiff to suggest that she was carrying a weapon inside her jacket.

Plaintiff does not dispute that she has received citations during the course of her employment at the Transit Authority, but

---

1. On oral argument, the parties agreed that the reference to "majority" did not suggest there was a dissent; rather, all three arbitrators agreed.

2. The TAB issued a subsequent opinion dated November 20, 1995 simply to correct the caption by properly identifying plaintiff's pass number and was identical to its November 7 opinion in every other way.

argues that the citations are of the type and frequency that any given bus driver might expect to receive over eleven years of driving. She offers no evidentiary support for this argument. She insists that she capably performed her duties at all times and submits copies of several commendations from her employer and letters from passengers commending her for her pleasant demeanor, professional conduct, and overall likeability.

According to plaintiff, defendant hired Joseph D'Auria and A. Natale, both white, in 1994 for the positions of superintendent and service line dispatcher respectively. From July 1994 to June 6, 1995, both Mr. D'Auria and Ms. Natale served as supervisors to plaintiff. Plaintiff states that they routinely cited her for unsubstantiated work deficiencies and insubordination and subjected her to harassing racial epithets. Specifically, plaintiff asserts that on June 28, 1994 Ms. Natale wrongfully cited her for being six minutes early to a bus stop, a citation that plaintiff believes Ms. Natale has never given to a white driver and that she herself had never received before. Despite full discovery, plaintiff offers no evidence, other than her own beliefs, that Ms. Natale treated her differently than her white co-workers. On August 11, 1994, Ms. Natale cited plaintiff once again for arriving six minutes before the scheduled pickup time and for failing to acknowledge Ms. Natale at the stop. On June 5, 1995, plaintiff received another violation from Ms. Natale for leaving three people behind at a stop. Plaintiff approached Ms. Natale to dispute this citation and claims that Ms. Natale became extremely rude and abusive. Plaintiff states that she complained to Mr. D'Auria about Ms. Natale's allegedly discriminatory actions, but that he did not conduct an internal investigation and summarily dismissed her contentions. Plaintiff also describes other unidentified white dispatchers and transit line supervisors as routinely making "racially derogatory comments," referring to African–American bus drivers as "dumb niggers." She

claims not to remember the incident with Mr. Williams and denies she was the driver.

Following arbitration, plaintiff challenged her resulting termination by filing complaints alleging racial discrimination on November 30, 1995 with both the New York City Commission on Human Rights and the Equal Employment Opportunity Commission ("EEOC"). The EEOC issued a Right to Sue letter on August 7, 1996. Plaintiff commenced this action on October 1, 1996.

Plaintiff agreed at a September 10, 1998 pre-motion conference to withdraw the second claim in her complaint stating a state tort claim, to withdraw her claim for punitive damages, and to limit her complaint to the federal race discrimination claim. On oral argument, the parties confirmed that discovery has been completed.

## Discussion

### Summary Judgment Standards

Motions for summary judgment are granted if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *See Lipton v. Nature Co.*, 71 F.3d 464, 469 (2d Cir.1995). The moving party must demonstrate the absence of any material factual issue genuinely in dispute. *See id.* The court must view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). However, the non-moving party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir.1986). The party must produce specific facts sufficient to establish that there is a genuine factual issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

■ In a discrimination action such as this, it is important to note that

[a] victim of discrimination is ... seldom able to prove his or her claim by direct evidence and is usually constrained to rely on the cumulative weight of circumstantial evidence.... Consequently, in a Title VII action, where a defendant's intent and state of mind are placed at issue, summary judgment is ordinarily inappropriate.

*Rosen v. Thornburgh*, 928 F.2d 528, 533 (2d Cir.1991) (citations omitted). On the other hand, "[t]he summary judgment rule would be rendered sterile ... if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985).

### Race Discrimination Under Title VII, Section 1981 and NYHRL

■ In order to establish a prima facie case of employment discrimination under Title VII, a plaintiff must demonstrate that: (1) she belongs to a protected class; (2) she was performing satisfactorily; (3) her employer made a decision adverse to her interests; and (4) the decision raises an inference of discrimination based on her membership in the protected class. *See Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir.1994). Once a prima facie case has been made, the employer must articulate a legitimate, non-discriminatory reason for having taken the action of which the plaintiff complains. *See Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254–55, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell–Douglas Corp. v. Green*, 411 U.S. 792, 802–03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). If this is done, the burden shifts back to the plaintiff to prove that the allegedly legitimate reason is merely a pretext for discrimination. *Id.* at 804, 93 S.Ct. 1817.

However, "a reason cannot be proved to be a 'pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (citation omitted). In the summary judgment context, *St. Mary's* requires a plaintiff to "establish a genuine issue of material fact either through direct, statistical or circumstantial evidence as to whether the employer's reason for discharging her is false and as to whether it is more likely that a discriminatory reason motivated the employer to make the adverse employment decision." *Gallo v. Prudential Residential Services Ltd., Partnership*, 22 F.3d 1219, 1225 (2d Cir.1994). The standards of proof governing an employment discrimination claim raised under 42 U.S.C. § 1981[3] and the New York HRL are the same as for a Title VII claim. *See Sutera v. Schering Corp.*, 73 F.3d 13, 16 n. 2 (2d Cir.1995) (HRL claim); *Hudson v. Int'l Business Machines Corp.*, 620 F.2d 351, 354 (2d Cir.1980) (Section 1981 claim); *Sogg v. American Airlines, Inc.*, 193 A.D.2d 153, 155–56, 603 N.Y.S.2d 21 (1st Dep't 1993) (HRL claim).

■ Here, defendant argues that plaintiff has failed to establish a prima facie case of discrimination as she has failed to show that she was performing her job satisfactorily at the time of her termination. Plaintiff insists that she capably performed her duties throughout the eleven years she was employed by the Transit Authority and submits 1) copies of several commendations she received from Joseph D'Auria dated July 19, 1993, May 2, 1994, August 15, 1994 and April 17, 1995, generally citing "a job well done" and "good work"; 2) a 1990 Five Year "Safe Driving Award" presented to her by the New York City Surface Transit; and 3) sixteen let-

---

**3.** Section 1981 provides:

All persons within the jurisdiction of the United States shall have the same right ... to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens....

42 U.S.C. § 1981(a).

ters written to either the Transit Authority or to plaintiff directly, commending plaintiff for her pleasant demeanor, professional conduct, and overall likeability. However, even assuming the admissibility of all of these documents, they fail to dispute the existence of plaintiff's extensive record of warnings, reprimands and suspensions so as to create a genuine issue of fact regarding her job performance. None controverts the violations and citations listed in plaintiff's extensive record. If anything, the commendations belie plaintiff's contentions of discriminatory animus by Mr. D'Auria as the commendations were issued by Mr. D'Auria himself. She does dispute the facts of the last two citations which led to her termination. Given that the prima facie showing required is so minimal, it will be assumed that plaintiff can meet her burden because, in any event, she cannot avoid summary judgment.

 Defendant argues that, even if plaintiff has established a prima facie case, the arbitral decision by the TAB serves as the legitimate, non-discriminatory reason for plaintiff's termination, and plaintiff has not raised a material issue of fact to show that her termination based upon the arbitration award was merely pretextual.[4] The two charges which plaintiff grieved through the arbitration process carried the proposed penalties of dismissal for the gross insubordination charge and a sixty day suspension for the charge of being discourteous to a passenger. Where a plaintiff pursues federal claims following an arbitration, the arbitral decision "is admissible as evidence and may be accorded such weight as the court deems appropriate." *Howard v. Holmes*, 656 F.Supp.

1144, 1149 (S.D.N.Y.1987). The Supreme Court in *Gardner–Denver*, 415 U.S. at 60 n. 21, 94 S.Ct. 1011 held that:

> We adopt no standards as to the weight to be accorded an arbitral decision, since this must be determined in the court's discretion with regard to the facts and circumstances of each case. Relevant factors include the existence of provisions in the collective-bargaining agreement that conform substantially with Title VII, the degree of procedural fairness in the arbitral forum, adequacy of the record with respect to the issue of discrimination, and the special competence of particular arbitrators. Where an arbitral determination gives full consideration to an employee's Title VII rights, a court may properly accord it great weight. This is especially true where the issue is solely one of fact, specifically addressed by the parties and decided by the arbitrator on the basis of an adequate record.

Since *Gardner–Denver*, courts continue to determine the weight to be accorded to arbitral decisions on a case-by-case basis. *See, e.g., Todeschini v. Niagara Mohawk Power Corp.*, 1997 WL 769470, at *4 (N.D.N.Y.1997) ("in the present case, the arbitrator's decision should not be given preclusive effect, but rather should be a factor to assist the court in reaching its own decision."). In *Umpierre v. Brockport*, 1997 WL 599314 (N.D.N.Y.1997), the court granted summary judgment where the plaintiff failed to raise an issue of fact regarding the legitimacy of the arbitration proceedings leading to her termination and thus "no rational trier of fact could conclude that SUNY Brockport fired her for

---

4. Defendant does not argue that the arbitration award precludes plaintiff from raising her federal claims under Title VII and Section 1981. Plaintiff asserts statutory rights articulated under Title VII, Section 1981 and the HRL, rights which are independent from her contractual rights and which are not covered by the collective bargaining agreement between the Transit Authority and plaintiff's union (which covers only contract interpretation

grievances, disciplinary grievances, and medical appeal grievances). Therefore, plaintiff's final arbitration decision awarded under a collective bargaining agreement does not bar her from bringing her Title VII and Section 1981 claims. *See Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 50–51, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974); *Humphrey v. Council of Jewish Federations*, 901 F.Supp. 703, 709 (S.D.N.Y.1995).

any reason other than because the arbitrator found her guilty of misconduct after hearing evidence over ten days." *Id.* at *4. In that case, the collective bargaining agreement contained "specific grievance and discipline procedures govern[ing] Umpierre's employment," *id.* at *1, but, as here, did not cover statutory discrimination claims, *see id.* at *5 n. 4. Nonetheless, now-Circuit Judge Pooler held, in concluding that no issue of fact had been raised that the defendant's reliance upon the arbitration was pretextual, that "it is immaterial that the arbitrator did not consider Umpierre's claim of discrimination and instead focused on the misconduct charges." *Id.* at *5. Similarly, in *Fleming v. United States Postal Service AMF,* 1991 WL 278310 (N.D.Ill.1991), the district court granted summary judgment where an arbitral decision cited prior valid suspensions and absenteeism in support of termination, the defendants asserted that the legitimate reasons for the plaintiff's termination were her past disciplinary record and absenteeism, and the plaintiff failed to provide evidence to indicate that discrimination instead was the more likely reason for her termination.

Indeed, applying here the various considerations articulated in *Gardner–Denver,* I find that the TAB decision is entitled to significant weight and, more importantly, that plaintiff has failed to provide evidence that could convince a reasonable jury that her termination was in fact motivated by discriminatory animus. Plaintiff does not take issue with the procedural fairness of the arbitral forum, which was a tripartite board, and plaintiff was represented at the hearings. While recognizing that arbitral decisions are not automatically accorded controlling weight, and that arbitration governed by a collective bargaining agreement with a plaintiff's union may not protect concerns regarding race in every instance, *see Gardner–Denver,* 415 U.S. at 56, 94 S.Ct. 1011, I find, as did Judge Pooler in *Umpierre,* that, for the foregoing reasons as well as those discussed below,

the arbitral decision is entitled to significant weight on this motion.

In attempts to neutralize the arbitral decision, plaintiff argues that the arbitration proceedings were inadequate because racial discrimination was never considered and the very same witnesses who testified in support of Ms. Natale were the white dispatchers whom plaintiff claims to be racist. Plaintiff also asserts that the arbitration proceedings were inadequate because the TAB failed to take into consideration her submitted letters of praise and commendation and her contentions that Mr. D'Auria and Ms. Natale were biased in citing her for unsubstantiated work deficiencies. Plaintiff's general contention that Mr. D'Auria and Ms. Natale unfairly cited her for unsubstantiated work deficiencies is not only unsupported but also fails to account for the twenty-one citations on plaintiff's disciplinary record that were issued before they became her direct supervisors. In fact, among the different supervisors who previously cited plaintiff for violations, one was African–American and submits an affidavit in support of the observed violation. Also, Ms. Natale's 1994 citation for arriving early to a bus stop was not plaintiff's first as she claims; she received an identical citation on April 25, 1991.

Plaintiff also argues that the arbitration proceedings were inadequate because one of the violations was based solely on the complaint initiated by Mr. Williams, a passenger, whom she claims misidentified her. Aside from a blanket denial of the January 9, 1995 incident, plaintiff takes issue with the fact that Mr. Williams described plaintiff in his initial letter of complaint to the Transit Authority as "a black female in her mid-thirties who wears glasses and also wears numerous rings," whereas she was fifty-three years old at the time and does not wear glasses. However, plaintiff overlooks that Mr. Williams, a lawyer, correctly listed plaintiff's bus number, receipts box number and her bus route in his contemporaneous letter to defendant, and also

positively identified plaintiff at the hearings as the bus driver in question. Plaintiff offers no basis for rejecting his letter and testimony other than that she does not remember the incident.

Finally, plaintiff makes no showing that she was treated differently from other, white employees who accumulated the kind of disciplinary record she accumulated. Plaintiff argues that her disciplinary record does not rise to the level of a "disturbing pattern" but merely represents minor citations that any typical bus driver might accumulate over eleven years of employment. No evidentiary basis for this argument is presented. To be sure, two of the twenty-six violations listed on plaintiff's record cite a failure to. wear a tie and standing alone, would constitute a minor disciplinary record. Viewed as a whole, however, a disciplinary record listing several citations for being "AWOL", being "reckless", being "insubordinate", and penalties of suspension totaling 91 days constitute an objectively progressive record of discipline for conduct reasonably deemed serious by her employer.

Plaintiff's claims of pretext and discriminatory animus are all without merit. Even when viewed in the light most favorable to plaintiff, I find that the arbitral decision combined with plaintiff's extensive and progressive disciplinary record serve as a legitimate, non-discriminatory basis for her termination and that no reasonable jury could find it to be merely pretextual. Defendant's motion for summary judgment is granted.

### Conclusion

Defendant's motion for summary judgment is granted. The Clerk of Court is directed to enter judgment dismissing the complaint.

**SO ORDERED.**