305 F.3d 113
 James COLLINS, Plaintiff-Appellant,
v.
NEW YORK CITY TRANSIT AUTHORITY, Alan Keipper, individually and as President of the New York City Transit Authority, Ralph Caruso, individually and as Superintendent of Electrical Department, Robert Wilson, individually and as Superintendent
of Electrical Department, Nabil Badr, individually and as Maintenance Supervisor of Electrical Department, and Peter Fazzi, individually and as Maintenance Supervisor of Electrical Department, Defendants-Appellees,
Carmen Suardy, individually and as Vice President Labor Disputes Resolution Section, Elfrida Scott McLaughlin, individually and as Director of Labor Relation Electrical Department, and Edward L. Williams, individually and as Power Maintainer (B) of Electrical Department, Defendants.
 Docket No. 00-9522.
 United States Court of Appeals, Second Circuit.
 Argued: October 25, 2001.
 Decided: September 20, 2002.
 
 Rick Ostrove, Leeds, Morelli & Brown, PC, Carle Place, NY, for Plaintiff-Appellant.
 Richard Schoolman, Office of the General Counsel, New York City Transit Authority, Brooklyn, NY, for Defendants-Appellees.
 Before: VAN GRAAFEILAND, WINTER, and SACK, Circuit Judges.
 WINTER, Circuit Judge.
 
 
 1
 James Collins appeals from Judge Dearie's grant of summary judgment dismissing his claims of race-based and retaliatory termination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), and 42 U.S.C. § 1983. He argues that the district court erred in holding that there was legally insufficient evidence that his termination was discriminatory or retaliatory. We disagree. Where an employee's ultimate termination depends upon, and is allowed by, a decision of an independent and unbiased arbitrator based on substantial evidence after a fair hearing, the arbitration decision has probative weight regarding the requisite causal link between an employee's termination and the employer's illegal motive. In light of the arbitration decision and the other evidence proffered, appellant cannot establish that link on this record.
 
 BACKGROUND
 
 2
 In reviewing a district court's grant of summary judgment, we view the facts in the light most favorable to appellant and draw all reasonable factual inferences in his or her favor. See McGuinness v. Lincoln Hall, 263 F.3d 49, 52 (2d Cir.2001); Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 36 (2d Cir.1994).
 
 
 3
 Appellant, an African American, worked as a Power Maintainer's Helper Group C for the New York City Transit Authority ("Transit Authority") between February 17, 1981 and October 22, 1991. During this period, his employment was governed by the terms of a collective bargaining agreement ("CBA") between the Transit Authority and the Transport Workers Union of America, Local 100. Among other things, the CBA established a multi-step grievance procedure ending with binding arbitration for adjudicating disciplinary actions — e.g., termination — against the Transit Authority's employees.
 
 
 4
 The parties have stipulated that appellant's claims must arise from events occurring on or after April 1, 1990 to be timely, although appellant alleges that a history of workplace discrimination against him started well before that date. Most of this history involves appellant's troubled relationships with Peter Fazzi, a white man who was appellant's immediate supervisor from March 1987 to October 1990, and with Nabil Badr, a man of Egyptian descent who became appellant's immediate supervisor thereafter and remained such until appellant's suspension.
 
 
 5
 In August 1987, Fazzi initiated a disciplinary action against appellant, but the charges were eventually dismissed. Appellant attributes these charges to Fazzi's racial bias. In January 1988, appellant informed Fazzi about a truck with serious brake problems and was ordered by Ralph Caruso, a superintendent of the electrical department, to drive the truck to a repair shop. When appellant refused to comply out of fear for his personal safety, a disciplinary action for insubordination was commenced. One month later, Fazzi told appellant that he was not allowed to attend a meeting of the work crew, and instructed appellant not to communicate with him directly, but instead to go through intermediate-level employees. Appellant believes that Fazzi singled him out because of his race, and that Fazzi's refusal to communicate with him directly was inconsistent with the Transit Authority's policy.
 
 
 6
 In March 1988, appellant filed a complaint alleging racial discrimination with the New York State Division of Human Rights ("SDHR"); the complaint was then forwarded to the Equal Employment Opportunity Commission ("EEOC"). In the complaint, appellant described, inter alia, Fazzi's non-communication with him. While the complaint was pending, Fazzi accused appellant of taking a shop vacuum cleaner for personal use, which appellant denied. In the course of their argument, Fazzi allegedly used racial slurs against appellant and warned him to drop his charges of racial discrimination.
 
 
 7
 On September 6, 1988, the Transit Authority placed appellant on an involuntary medical leave following a hearing test. Appellant protested this decision and demanded to be examined by another doctor to determine whether he was fit for work. After the second examination, appellant was found to be capable of working and was reinstated in November 1989. However, due to what appellant asserts was retaliation for the complaint that he filed with the SDHR/EEOC, appellant lost a significant portion of his income.
 
 
 8
 Appellant's relationships with his co-workers and superiors continued to deteriorate after his reinstatement. In June 1990, a dispute arose between appellant and Edward Williams, a Power Maintainer (B), who accused appellant of slamming a car door on his hand. Robert Wilson, a superintendent of the electrical department, filed a disciplinary action against appellant based on the incident and recommended a three-day suspension, but, pursuant to the CBA's grievance procedure, an arbitration board overruled this decision, concluding that the facts did not support Williams' accusation.
 
 
 9
 Badr replaced Fazzi and became appellant's new supervisor in October 1990. During the transition, Fazzi told Badr about the past problems that he had with appellant and mentioned appellant's complaint against him. On November 26, 1990, Badr submitted a memorandum to Wilson recounting three incidents of appellant's misconduct and insubordination. Specifically, Badr alleged that appellant: (i) threatened to call into work sick on a pretense because he disliked maintaining buses; (ii) reported to duty over an hour late because he stopped for coffee; and (iii) interrupted him repeatedly as he talked with other employees.
 
 
 10
 The last conflict ended especially badly. Badr reported to Wilson that appellant had threatened to injure Badr and his family if Badr wrote him up for insubordination. Badr called the police about the threat but did not file a complaint. Appellant claims that he was merely reacting to Badr's use of harsh language and wanted to warn him not to take that "tone of voice."
 
 
 11
 Afterward, appellant wrote a letter to Wilson complaining about Badr's conduct. However, Wilson did not act on appellant's letter promptly, although he subsequently concluded that there was insufficient evidence to validate Badr's accusation that appellant had threatened him and that Badr was wrong to utter obscenities at appellant. Wilson also suggested that appellant be transferred to a new environment, a recommendation that appellant deems to have been retaliatory.
 
 
 12
 Appellant's final confrontation with Badr occurred on June 11, 1991. Badr ordered appellant to appear at a testing location after a scheduled meeting, but appellant did not arrive at that time. Badr then called and located appellant at the crew quarters and demanded to know why he did not report as instructed. Appellant denied that he had been told anything, informed Badr that he was having lunch and hung up the phone. Badr alerted Michael Matkovic, a Deputy Superintendent, about this conversation and was told to write up the incident.
 
 
 13
 When appellant arrived at the testing location after his lunch, he again denied that he had been told to report there. He also accused Badr of harassing him. As appellant and Badr argued, appellant became increasingly upset. According to Badr, appellant shouted threats and profanities at him and then punched him in the face, breaking his glasses in the process. Appellant claims that he never touched Badr. Appellant subsequently left the scene, and Badr called Matkovic to let him know what had happened. The two of them then went to the Transit Authority's Medical Assessment Center to get treatment for Badr.
 
 
 14
 Appellant was told to appear at the Office of Labor Relations on the following day, but failed to do so; he also stated that he was too "mentally disturbed" to write a report. The Transit Authority thereafter terminated his employment on June 13, 1991, in accordance with its standard procedure for an employee assault. Appellant filed a grievance against the Transit Authority and was represented by his union at the arbitration hearing. On October 22, 1991, the arbitration board issued an opinion finding that appellant had physically assaulted Badr and upholding appellant's termination. Appellant's termination was then implemented.
 
 
 15
 Badr subsequently filed a criminal complaint against appellant concerning the assault. This resulted in appellant's entering of a guilty plea in August 1991 to a charge of disorderly conduct. In December 1991, appellant filed a complaint with the SDHR alleging that the Transit Authority's decision to fire him was discriminatory and retaliatory. The complaint was then forwarded to the EEOC.
 
 
 16
 In April 1993, appellant commenced the present action against the Transit Authority and some of its employees, stating claims under Title VII, 42 U.S.C. §§ 1981, 1983, 1985, and various state laws. Some claims were dropped in subsequent proceedings. The remaining claims are: (i) against the Transit Authority for discriminatory and retaliatory employment termination in violation of Title VII; (ii) against the Transit Authority for retaliatory acts in violation of the First Amendment; and (iii) against the various individuals for violation of Section 1983. On October 30, 2000, the district court granted summary judgment dismissing the remaining claims, prompting this appeal.
 
 DISCUSSION
 
 17
 We review the district court's grant of summary judgment de novo. See Santos v. Murdock, 243 F.3d 681, 683 (2d Cir.2001). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see also Rodriguez v. City of New York, 72 F.3d 1051, 1060-61 (2d Cir.1995).
 
 
 18
 In an employment discrimination case, a plaintiff has the burden at the outset to prove "by the preponderance of the evidence a prima facie case of discrimination." Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). To meet this burden, a plaintiff must show: (i) membership in a protected class; (ii) qualifications for the position; (iii) an adverse employment action; and (iv) circumstances surrounding that action giving rise to an inference of discrimination. See Norville v. Staten Island Univ. Hosp., 196 F.3d 89, 95 (2d Cir.1999); Chambers, 43 F.3d at 37.
 
 
 19
 A plaintiff raising a claim of retaliatory discharge has a similar burden of initially establishing a prima facie case of retaliation. See Wanamaker v. Columbian Rope Co., 108 F.3d 462, 465 (2d Cir.1997). "To make out a prima facie case of retaliation, an employee must show that the employee was engaged in protected activity; that the employer was aware of that activity; that the employee suffered adverse employment decisions; and that there was a causal connection between the protected activity and the adverse employment action." Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons, 842 F.2d 590, 593 (2d Cir.1988).
 
 
 20
 Generally speaking, a plaintiff's burden of establishing a prima facie case in the context of employment discrimination law is "minimal." McGuinness, 263 F.3d at 53. However, appellant has not met even this low threshold, because the circumstances of his termination do not give rise to or support an inference of discrimination or retaliation.[1] Appellant challenged the Transit Authority's decision to fire him and was finally discharged only after the arbitration board made an independent inquiry, including the taking of evidence, and authorized termination because it found that appellant had assaulted Badr. Appellant does not suggest that the arbitration board was not a fully independent and unbiased decisionmaker in affirming his termination or that his claims of bias and of Badr's faking an assault was not fully aired before the board. In fact, appellant highlights the fact that the arbitration board has previously ruled in his favor against the accusations of Williams and Wilson.
 
 
 21
 Moreover, there is no claim that the arbitration board "rubber-stamped" the recommendations of appellant's supervisors. First, the CBA established this process both to deprive the Transit Authority of the power to terminate an employee unilaterally and to ensure fair and probatively sound decisions for aggrieved employees. Second, the arbitration board conducted three days of hearings, at which appellant was represented by his union and evidence was received. Thereafter, the arbitration board issued a reasoned fourteen-page opinion, concluding that there was corroboration of Badr's injuries occurring from an assault when he and appellant were alone and that appellant should be discharged for the assault.
 
 
 22
 Appellant's termination occurred, therefore, only after a decision, based on substantial evidence, of an undisputedly independent, neutral, and unbiased adjudicator that had the power to prevent the termination. This fact is highly probative of the absence of discriminatory intent in that termination. See Alexander v. Gardner-Denver Co., 415 U.S. 36, 60 n. 21, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974) (determination of how much weight to give a particular arbitration decision is left to court's discretion and depends on facts and circumstances of each case); accord Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 743 n. 22, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981); United States v. Int'l Bhd. Of Teamsters, 954 F.2d 801, 809-10 (2d Cir.1992). Collins has offered insufficient evidence of causation linking his termination to motives of retaliation or discrimination to overcome the cumulative probative weight of the evidence of a legitimate reason for his discharge and of the final termination decision by the arbitration board. See Stimpson v. City of Tuscaloosa, 186 F.3d 1328, 1331-32 (11th Cir.1999); Willis v. Marion County Auditor's Office, 118 F.3d 542, 547 (7th Cir.1997); Long v. Eastfield Coll., 88 F.3d 300, 307 (5th Cir.1996). While appellant may have proffered (barely) enough evidence to create an issue of fact over whether Badr faked the assault for discriminatory or retaliatory purposes, that proffer is not sufficient to overcome the additional probative weight of the arbitration award allowing his termination.
 
 
 23
 In sum, a negative arbitration decision rendered under a CBA does not preclude a Title VII action by a discharged employee. See Gardner-Denver, 415 U.S. at 45-60, 60 n. 21, 94 S.Ct. 1011. However, a decision by an independent tribunal that is not itself subject to a claim of bias will attenuate a plaintiff's proof of the requisite causal link. Where, as here, that decision follows an evidentiary hearing and is based on substantial evidence, the Title VII plaintiff, to survive a motion for summary judgment, must present strong evidence that the decision was wrong as a matter of fact — e.g. new evidence not before the tribunal — or that the impartiality of the proceeding was somehow compromised. Here, however, the tribunal received all the available evidence in an evenhanded proceeding and rendered a decision consistent with the almost overwhelming evidence of appellant's assault on Badr.
 
 
 24
 For these reasons, we conclude that the circumstances of appellant's termination by the Transit Authority do not support an inference of discrimination or retaliation. We therefore affirm.
 
 
 
 Notes:
 
 
 [1]
 We recognize that the Transit Authority's defense may be viewed either as an attack on appellant's showing of an inference of discrimination or retaliation in the prima facie case or as an attack on plaintiff's satisfaction of the subsequent requirement that a proffered legitimate reason for an employment action be shown to be pretextual. Because issues of this nature tend to collapse as a practical matter under theMcDonnell Douglas framework, see generally Lizardo v. Denny's, Inc., 270 F.3d 94, 103 (2d Cir.2001) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)), we treat the Transit Authority's defense as an attack on appellant's prima facie case. By doing so we do not mean to preclude treatment of such a defense as an attack on a claim of pretext.