Victorious **VANHORNE**, Plaintiff,

v.

**NEW YORK CITY TRANSIT AUTHORITY** Defendant.

No. 00–CV–1144 (NG).

United States District Court, E.D. New York.

July 22, 2003.

Victorious Vanhorne, pro se.

Victor Levy, Office of General Counsel, New York City, for defendant.

### *OPINION AND ORDER*

GERSHON, District Judge.

*Pro se* plaintiff, Victorious Vanhorne, is a former track employee of defendant New York City Transit Authority ("Transit Authority"). Plaintiff brings claims of race-based and retaliatory termination in violation of Title VII of the Civil Rights Act of

1964, as amended, 42 U.S.C. §§ 2000e *et. seq.* ("Title VII"), and also claims that defendant subjected him to unequal terms and conditions of employment. Defendant now moves for summary judgment pursuant to Fed.R.Civ.P. 56(c). Defendant's motion is granted in its entirety.

### Facts

Unless otherwise indicated, the following facts are undisputed.

Plaintiff is an African American who was employed by the Transit Authority as a track worker from 1993 until his dismissal in 1999. Prior to his dismissal and during the time period at issue, plaintiff was stationed in the Jamaica Yard, a track maintenance facility in Queens, New York. On the morning of April 21, 1999, plaintiff was sent home for the remainder of the day by supervisor Sherlock Adams, also African American, for failing to complete assigned tasks in the time allotted. Adams also accused plaintiff of insubordination and refusal to work. Adams presented these charges to Superintendent John Tantuccio, who subsequently recommended that plaintiff be suspended for thirty days.

On April 22, 1999, the disciplinary charge was upheld, but plaintiff's suspension was reduced to ten days following a Step I disciplinary hearing,[1] at which both plaintiff and his union representative were present. Plaintiff continued to attend work pending his appeal of that decision.

Defendants allege that on April 24, 1999, Adams attempted to leave Jamaica Yard but was blocked into his spot by plaintiff, who maneuvered his own car so as to prevent Adams from leaving. Adams managed to exit only after removing traffic cones and other obstructions. Plaintiff then followed Adams onto the Interboro Parkway and into Brooklyn, New York. Adams made a series of turns to evade plaintiff, to no avail. At one point, plaintiff pulled alongside Adams and yelled something "indistinguishable" at him. Adams reported the incident to the New York City Police at Brooklyn's Eighty–First precinct.

The following morning, plaintiff reported to work and "sang" threatening lyrics to Adams, namely, "Get ready to die; your ass belongs to me."[2] On April 26, 1999, Adams brought the matter to the attention of two Transit Authority supervisors and filed a police report concerning the events of April 24th and 25th. Tantuccio subsequently conducted an investigation and reported the matter to General Superintendent John Clinton. Tantuccio recommended, based on Transit policy,[3] immediate disciplinary action and plaintiff's termination. The disciplinary charge and penalty of immediate dismissal were upheld on April 28, 1999, following a Step I disciplinary hearing. Plaintiff appealed both the disciplinary penalty relating to

---

**1.** Under the collective bargaining agreement ("CBA") between the Transit Authority and plaintiff's union, the Transport Workers' Union ("TWU"), an employee may bring a grievance if he disagrees with any disciplinary action proposed to be taken against him. The CBA provides a multi-step process for grievances, with arbitration as the final step. The arbitration is conducted before a Tripartite Arbitration Board, consisting of a neutral arbitrator, a TWU representative, and a Transit Authority representative. The arbitration board's decision is final and binding on the parties.

**2.** Although plaintiff admits singing these lyrics, he denies their threatening nature, noting the song's frequent radio play.

**3.** Rule 10(d) of the *Rules and Regulations Governing Employees Engaged in the Operation of the MTA New York City Transit System* addresses the conduct of employees, stating, "Employees must not make threatening gestures towards, or commit assault or battery against any person, nor use loud, uncivil, indecent or profane language, even under the greatest provocation."

plaintiff's refusal to work on April 21, and the current charge related to harassing, stalking and threatening Adams. The two charges and resulting penalties were upheld on May 27, 1999 in a Step II hearing.[4] The TWU then appealed the Step II decision to a Tripartite Arbitration Board ("Board") which heard the matter on June 9, 1999.

The Board dismissed the allegations of insubordination and refusal to work. With regard to the charge of harassing, stalking and threatening Adams, however, the majority of the Board found that plaintiff had engaged in "extremely serious conduct . . . [that] justly merits [plaintiff's] dismissal." The Board further found that plaintiff had lied during his testimony. Plaintiff's employment was promptly terminated.

Plaintiff brought a charge of discrimination to the Equal Employment Opportunity Commission (EEOC) and received a Right to Sue Notice from the EEOC on or about December 1, 1999. Plaintiff then brought this action claiming race-based and retaliatory termination in violation of Title VII, and further, that defendant subjected him to unequal terms and conditions of employment. Defendant's motion for summary judgment and supporting papers, including Notice under Local Civil Rule 56.2, were served on the plaintiff on May 10, 2002. Despite the Court's scheduling order that plaintiff's opposition papers be filed by June 24, 2002, the motion remains unopposed as of the date of this order.

### Summary Judgment Standard

A motion for summary judgment is properly granted where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Lipton*

*v. Nature Co.,* 71 F.3d 464, 469 (2d Cir. 1995). The burden is on the moving party to demonstrate that there are no material facts genuinely in dispute. *See e.g., Weinstock v. Columbia Univ.,* 224 F.3d 33, 41 (2d Cir.2000). In deciding a motion for summary judgment, the court must view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The non-moving party must produce specific facts sufficient to establish that there is a genuine factual issue for trial. *Celotex Corp.,* 477 U.S. at 322–323, 106 S.Ct. 2548. A motion for summary judgment cannot therefore be defeated by "mere speculation or conjecture." *Giordano v. City of New York,* 274 F.3d 740, 749–50 (2d. Cir.2001).

■ Furthermore, in *pro se* cases, the court must view the submissions by a more lenient standard than that accorded to "formal pleadings drafted by lawyers," *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), and should read a *pro se* party's "supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994).

■ In employment discrimination actions, courts are particularly cautious about granting summary judgment where intent is at issue. This is because "a victim . . . [is] seldom able to prove his or her claim by direct evidence and is usually constrained to rely on the cumulative weight of circumstantial evidence." *Rosen v. Thornburgh,* 928 F.2d 528, 533 (2d Cir. 1991). Consequently, where a defendant's intent and state of mind are placed at issue, summary judgment is ordinarily inappropriate. *Id.* On the other hand, "the

---

**4.** Both plaintiff and the TWU were present at the Step II hearing.

summary judgment rule would be rendered sterile ... if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion." *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.1985), *cert. denied,* 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985).

## I. Discussion

■■ In an employment discrimination case, a plaintiff has the burden at the outset to prove "by the preponderance of the evidence a prima facie case of discrimination." *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). To meet this burden, a plaintiff must show: (i) membership in a protected class; (ii) qualifications for the position; (iii) an adverse employment action; and (iv) circumstances surrounding that action giving rise to an inference of discrimination. *See Norville v. Staten Island Univ. Hosp.,* 196 F.3d 89, 95 (2d Cir.1999).

### A. Termination on the Basis of Race

■ Construing plaintiff's filings liberally to effect the remedial purposes of Title VII, plaintiff nonetheless fails to satisfy his minimal burden of proving a prima facie case of discriminatory discharge.

Although plaintiff, as an African American, is a member of a protected class and has suffered an adverse employment action, he fails to present an issue of fact as to whether he was qualified for his position as a track worker with the Transit Authority. In determining a plaintiff's work qualifications, I look to whether plaintiff's actual performance met the reasonable expectations of his employer. *See, e.g. Meiri,* 759 F.2d at 995. On this point, plaintiff proffers no evidence. It is well settled that threats and harassing behavior render an employee unqualified and that such behavior falls below the reasonable expectations of his or her employer. *See Matima v. Celli,* 228 F.3d 68, 79 (2d Cir.

2000). Given the Board's finding that plaintiff harassed, stalked, and threatened Adams with physical violence, plaintiff fails to demonstrate that he met the reasonable expectations of the Transit Authority.

■■ In addition, plaintiff fails to demonstrate that the circumstances surrounding his termination give rise to an inference of discrimination. In his complaint plaintiff alleged that an unnamed "caucasian" employee who "struck and knocked down" a supervisor "got his penalty changed" and continues to work for the Transit Authority. However, plaintiff neither identifies the employee by name nor proffers any evidence to support his allegation. At his deposition, plaintiff could not identify the "caucasian" employee with any degree of certainty. Although he believed the "caucasian" employee was a track worker, plaintiff only guessed as to his identity, testifying, "[I]t might be Raffa or *something like that*" (emphasis added). Furthermore, in his deposition, plaintiff testified that Adams, also African American, singled him out for disciplinary measures due to his color. However, a plaintiff's personal conclusory assumptions as to the reasoning behind a disciplinary decision are insufficient to support such an inference. *See Alleyne v. Four Seasons Hotel,* 99 Civ. 3432, 2001 WL 135770, at *11 (S.D.N.Y. Feb.15 2001), *aff'd,* 25 Fed. Appx. 74(2d Cir.2002). Because plaintiff submits no evidence to support his claim of disparate treatment plaintiff fails to demonstrate that the circumstances of his termination give rise to an inference of discrimination.

■■ In addition, the Board's conclusion regarding plaintiff's termination provides significant support for the conclusion that there has been no discrimination. In *Collins v. City of New York Transit Auth.,* 305 F.3d 113 (2d Cir.2002), the Second Circuit held that a decision by an unbiased, independent tribunal necessitates that

plaintiff, to survive a motion for summary judgment, must present strong evidence that the tribunal's decision was wrong as a matter of fact. As the Court of Appeals explained:

> [A] negative arbitration decision rendered under a CBA does not preclude a Title VII action by a discharged employee ... However, a decision by an independent tribunal that is not itself subject to a claim of bias will attenuate a plaintiff's proof of the requisite causal link. Where, as here, that decision follows an evidentiary hearing and is based on substantial evidence, the Title VII plaintiff, to survive a motion for summary judgment, must present strong evidence that the decision was wrong as a matter of fact—e.g. new evidence not before the tribunal—or that the impartiality of the proceeding was somehow compromised. *Id.* (internal citation omitted).

*See also Brinson v. New York City Transit Auth.,* 60 F.Supp.2d 23, 29 (E.D.N.Y. 1999), *aff'd,* 213 F.3d 625, 2000 WL 562421 (2d Cir.2000).

In applying *Collins* to the case at hand, I conclude that the arbitrator's decision in plaintiff's matter is entitled to great weight. In *Collins,* as here, the arbitration did not deal with the issue of discrimination, but the Second Circuit approved use of the arbitral decision on the basis of the thorough and fair examination of the factual issues regarding the employee's conduct. As in *Collins,* the findings here were made by "an independent and unbiased arbitrator based on substantial evidence after a fair hearing." *Id.* Indeed, the Tripartite Arbitration Boards here and in *Collins* were formed pursuant to the same agreement, namely, the CBA between the Transit Authority and the Transport Workers Union of America. Plaintiff does not demonstrate that the arbitrator's decision was wrong as a matter of fact or even allege that the

impartiality of the proceeding was somehow compromised. Furthermore, plaintiff produces no new evidence not before the tribunal. On the contrary, defendant's motion for summary judgment remains unopposed, and plaintiff has submitted no evidence supporting his allegations of discrimination.

In accordance with *Collins,* therefore, this Court finds that plaintiff has failed to establish a prima facie case of discrimination, and that claim is dismissed.

## B. RETALIATORY TERMINATION

 Plaintiff has also failed to establish a prima facie case of retaliation under Title VII. To make out a prima facie case of retaliation, an employee must demonstrate: (1) that he participated in a protected activity known to defendant; (2) an adverse employment action; and (3) a causal connection between the protected activity and the adverse employment action. *McMenemy v. City of Rochester,* 241 F.3d 279, 282–283 (2d Cir.2001).

Here, even construing plaintiff's claim liberally in light of his *pro se* status, plaintiff presents no evidentiary support for his retaliation claim. Plaintiff alleges three instances of negative employment action, namely: (1) that his supervisor threatened to "get him" after he requested that the supervisor stop smoking cigarettes in his vicinity; (2) that his supervisor banned employees from playing video games or using cell phones at Jamaica Yard, even during down-time; and (3) that plaintiff's supervisor sent him home for not working, even though plaintiff alleges that he told his supervisor that he was not supposed to lift heavy items. Plaintiff fails to allege a causal connection between any adverse employment action and any type of protected activity. Here, plaintiff's only protected activity was the filing of the EEOC Charge, which was filed after plaintiff was fired by the Transit Authority. No nega-

tive employment action is alleged to have occurred after the filing of the EEOC charge. Because plaintiff's dismissal came prior to the filing of the EEOC charge and no further negative employment action occurred subsequent to the filing, plaintiff cannot establish a causal connection between any protected activity and the adverse employment action. Therefore, plaintiff's retaliation claim must be dismissed.

### C. Unequal Terms and Conditions of Employment

In his complaint, plaintiff alleges that he was subjected to unequal terms and conditions of employment. To establish this claim, plaintiff must show that there were other similarly situated employees, outside of the protected class, who engaged in conduct substantially similar to that of plaintiff but received preferential treatment. *Jobe v. Teachers' Retirement Sys. of N.Y. City,* 1999 WL 243626 at *5 (E.D.N.Y.1999). During the course of his deposition, plaintiff indicated that quarrels with supervisors over bathroom and coffee breaks formed the basis for this claim. However, plaintiff has not provided any facts demonstrating that other similarly situated employees, engaging in conduct similar to that which he engaged in, were treated differently. Accordingly, plaintiff's claim of unequal terms and conditions of employment cannot survive the motion for summary judgment.

### Conclusion

Defendant's motion for summary judgment dismissing the action is granted. The Clerk of Court is directed to enter judgment for defendant.

**SO ORDERED.**