**Pedro PAYANO, Plaintiff,**

v.

**FORDHAM TREMONT CMHC, Defendant.**

No. 02 Civ. 5218(VM).

United States District Court, S.D. New York.

Oct. 22, 2003.

Pedro Payano, Bronx, NY, Pro se.

Guy R. Cohen, Davis & Gilbert, LLP, New York City, Raphael Sun Lee, Davis & Gilbert LLP, New York City, for Defendant.

### DECISION AND ORDER

MARRERO, District Judge.

Plaintiff Pedro Payano ("Payano"), *pro se*, alleges that his former employer, defendant Fordham–Tremont Community Mental Health Center ("Fordham–Tremont"), engaged in unlawful racial discrimination when Fordham–Tremont terminated his employment as a network administrator, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.* Payano also claims that Fordham–Tremont employees racially and sexually harassed him, creating a hostile working environment, in violation of Title VII. Fordham–Tremont moves for summary judgment to dismiss all of Payano's claims. For the reasons discussed below, the motion is granted.

## I. BACKGROUND [1]

### A. PAYANO'S HIRING AND TERMINATION

Fordham–Tremont hired Payano as a network administrator in October 2000 at a starting salary of $40,000 per year. Tyrone Mosby ("Mosby"), Director of the Evaluation Management Information Systems Department ("EMIS"), interviewed Payano and recommended that Payano be hired. Although Mosby determined that Payano did not have the experience or technical skills required for the position, Mosby believed that Payano could learn those skills on the job, just as the previous network administrator had done.

Fordham–Tremont generally hires new employees on a three-month probationary basis, after which Fordham–Tremont determines whether to retain or terminate the employee, or whether to extend the probationary period. In January 2001, Mosby gave Payano a somewhat negative written work performance evaluation in

---

**1.** The factual summary that follows derives from: (1) Plaintiff's Statement in Opposing Defendant's Motion for Judgment, dated September 2, 2003 ("Payano Mem."); (2) Declaration of Tyrone Mosby, dated July 15, 2003 ("Mosby Decl.") (3) Declaration of D. Gloria Hernandez, dated July 15, 2003; (4) Declaration of Sandra Warren, dated July 15, 2003; and (5) Declaration of Raphael S. Lee, dated July 16, 2003 Ex. A ("Payano Dep."). Except where specifically referenced, no further citation to these sources will be made.

which Mosby recommended that Payano's probationary period be extended. The evaluation mentioned four times that Payano had forgotten or failed to complete assignments. It also mentioned that he "[t]akes a long time to complete his assignments." (Mosby Decl. Ex. C.) Under the heading "GENERAL COMMENTS," Mosby wrote, "I have indicated a number of times that I expect to see improvements in Performance as Pedro's computer skills improve. I am hopeful this will be the case." (*Id.*) Payano signed the evaluation and, under the heading "EMPLOYEE COMMENTS," Payano indicated he agreed that he needed to improve his skills with respect to a particular software program called Medical Manager.

Payano failed to improve, and, in early July 2001, Mosby, in consolation with Chief Operating Officer David Tatge, decided to give Payano one more chance to improve before terminating him. Mosby gave Payano a second written work evaluation, dated July 9, 2001, which was even more negative than the first. For example, it stated that Payano's "[q]uality of work is mostly inadequate and substandard" and that he "has not progressed to other important tasks integral to his job." (Mosby Decl. Ex. D.) The evaluation included a chart of three goals, each involving certain computer skills, and the chart indicated for each goal a "review date" of August 17, 2001. Below the chart, Mosby wrote, "[a]chievement of above goals by dates indicated is necessary to ensure continued effectiveness of EMIS.... [S]ignificant improvement in work performance is absolutely essential." (*Id.*) Under the heading "EMPLOYEE COMMENTS," Payano wrote, "I will definitely work on those areas that need improvement in order to make EMIS a better department." (*Id.*)

Payano again failed to improve, and based on Mosby's recommendation, Fordham–Tremont decided to terminate him. Without alerting Payano, Fordham–Tremont placed an ad in the New York Times on September 9, 2001 seeking a replacement. On October 15, 2001, Mosby and Human Resources Director D. Gloria Hernandez informed Payano that he was being terminated. Two days later, Fordham–Tremont rehired Payano's predecessor at a salary of $60,000 per year.

## B. *SEXUAL HARASSMENT ALLEGATIONS*

In July 2001, Sandra Warren, Manager of the Billing Division of Fordham–Tremont, reported to Mosby that Payano had spoken to a coworker in an inappropriate manner. Mosby then warned Payano to limit his conversations to work-related issues. According to Payano, he had been speaking to the coworker about the company's benefits, not anything inappropriate. A few weeks after this incident, Payano alleges that Warren, who was unaware that Payano knew she had reported him to Mosby, began sexually harassing him. Warren allegedly grabbed Payano's cheeks and told a coworker, "Isn't he so cute?" (Payano Mem. ¶ 21.) Warren then allegedly put her arms around Payano's waist, and stated that Payano reminded her of an old boyfriend and looked like a young Fidel Castro. Payano alleges that on other occasions that summer Warren put her arms around Payano's waist, making Payano "uncomfortable" because he "felt that Ms. Warren was a double-faced person, pretending friendship, while hurting people behind their backs." (*Id.* ¶ 22.)

## C. *RACIAL HARASSMENT ALLEGATIONS*

Payano alleges that, after September 11, 2001, Warren constantly referred to him as an "Arab terrorist." (Payano Mem. ¶ 23.) Payano's great grandfather was Palestini-

an (the rest of his ancestry is from the Dominican Republic) and, at the time, Payano wore a long beard. Payano also alleges that Mosby "constantly joked that [Payano] could not be trusted with completing job assignments because [Payano] looked like an Arab terrorist." (*Id.* ¶ 24.)

### D. *FORDHAM–TREMONT'S DISCRIMINATION POLICY*

Fordham–Tremont has a written "Sexual Harassment and Discrimination" policy which directs employees to report offending conduct to the Director of Human Resources, or to the employee's immediate supervisor. Payano testified at his deposition that he received a copy of the policy and that he participated in a training course regarding sexual harassment.

Payano spoke with coworker Elizabeth Rodriguez ("Rodriguez") about his problems, and based on her advice alone, Payano decided not to pursue any grievance procedures under the policy. Rodriguez warned Payano that Warren "tends to get people fired from their jobs." (Payano Dep. 47.) Payano "didn't want to get on Sandra Warren's bad side" because he "didn't want to get fired." (*Id.* 48–49.)

### II. *SUMMARY JUDGMENT STANDARD*

The Court may grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court must first look to the substantive law of the action to determine which facts are material; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Even if the parties dispute material facts, summary judgment will be granted unless the dispute is "genuine." *Id.* at 249, 106 S.Ct. 2505. "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Id.* at 252, 106 S.Ct. 2505.

Throughout this inquiry, the Court must view the evidence in the light most favorable to the non-moving party and must draw all reasonable inferences in favor of that party. *See Hanson v. McCaw Cellular Communications, Inc.,* 77 F.3d 663, 667 (2d Cir.1996).

### III. *FEDERAL ANTI-DISCRIMINATION LAWS*

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin...." 42 U.S.C. § 2000e–2(a)(1). Title VII provides the basis for Payano's claim of discriminatory termination, and for his claims of racial and sexual harassment.

### A. *DISCRIMINATORY DISCHARGE*

To establish a claim for employment discrimination under Title VII, the plaintiff first "has the burden of proving by the preponderance of the evidence a prima facie case of discrimination." *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). "To meet this burden, a plaintiff must show: (i) membership in a protected class; (ii) qualifications for the position;

(iii) an adverse employment action; and (iv) circumstances surrounding that action giving rise to an inference of discrimination." *Collins v. New York City Transit Authority,* 305 F.3d 113, 118 (2002) (citations omitted). "[T]he 'prima facie proof required' in a given case will depend on the specific facts in question." *McGuinness v. Lincoln Hall,* 263 F.3d 49, 53 (2d Cir.2001) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 n. 13, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). "Generally speaking, a plaintiff's burden of establishing a prima facie case in the context of employment discrimination law is 'minimal.'" *Collins* 305 F.3d at 118 (quoting *McGuinness,* 263 F.3d at 53).

If the plaintiff meets this minimal burden, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the adverse employment action. *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089 (citing *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817). Finally, if the defendant meets this intermediary burden, "the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* (citing *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. 1817). Through all steps of this assessment, the evidence the plaintiff presents in opposing summary judgment must nonetheless be sufficient to demonstrate the discriminatory intent underlying defendant's action. *See St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

## B. *RACIAL AND SEXUAL HARASS-MENT*

■ In addition to prohibiting discrimination resulting in discreet, adverse employment actions, Title VII makes it un-lawful to "requir[e] people to work in a discriminatorily hostile or abusive environment." *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). To prevail under a hostile work environment theory, the plaintiff must first demonstrate that the workplace was "permeated with 'discriminatory intimidation, ridicule, and insult,' that was 'sufficiently severe or pervasive to alter the conditions of the victim's employment.'" *Id.* (quoting *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 65, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)). Second, "the plaintiff must show a specific basis for imputing the hostile work environment to the employer." *Fitzgerald v. Henderson,* 251 F.3d 345, 357 (2d Cir.2001). On this second point, "[a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 765, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).

However, when the offending conduct does not cause a tangible employment action, the defendant employer may raise an affirmative defense comprised of two elements: (1) "that the employer exercised reasonable care to prevent and correct promptly" any discriminatory behavior, and (2) "that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Id.; see also Faragher v. City of Boca Raton,* 524 U.S. 775, 806–07, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) ("If the plaintiff unreasonably failed to avail herself of the employer's preventive or remedial apparatus, she should not recover damages that could have been avoided if she had done so."). This is commonly

known as the *Burlington/Faragher* affirmative defense.[2]

"Although not necessarily dispositive, the existence of an anti-harassment policy with complaint procedures is an important consideration in determining whether the employer has satisfied the first prong of this defense." *Caridad v. Metro–North Commuter R.R.*, 191 F.3d 283, 295 (2d Cir.1999). As for the second prong, an employee who completely fails to avail herself of grievance procedures will be deemed to have acted unreasonably unless the employee "come[s] forward with one or more reasons why the employee did not make use of the procedures." *Leopold v. Baccarat, Inc.*, 239 F.3d 243, 246 (2d Cir. 2001). This intermediate burden of production requires credible evidence "to the effect that the employer has ignored or resisted similar complaints or has taken adverse actions against employees in response to such complaints." *Id.*

## IV. DISCUSSION

### A. DISCRIMINATORY DISCHARGE

█ Payano has failed to meet even his minimal burden to raise a prima facie case of employment discrimination because the circumstances of his discharge do not in any way raise an inference of unlawful discrimination. *Cf. Collins*, 305 F.3d at 118 (holding that plaintiff had "has not met even this low threshold, because the circumstances of his termination do not give rise to or support an inference of discrimination or retaliation"). Importantly, Payano alleges that the racially-charged comments began only after September 11, 2001, two days after Fordham–Tremont had placed an ad in the New York Times seeking to replace him. Payano even con-

ceded at his deposition that race had nothing to do with his termination.

Q: Do you think the termination was motivated by racial discrimination?

A: No.

(Payano Dep. 167.) Payano's claim of an unlawfully discriminatory discharge is plainly meritless, and the Court will dismiss this claim with prejudice. Alternatively, the Court finds that Fordham–Tremont's account of the reasons for Payano's termination — that Payano never demonstrated sufficient improvement in his technical computing skills — is compelling and entirely unrefuted, therefore providing an independent basis for summary judgment.

In his deposition, Payano explained that this lawsuit was "a form of vindication" because he "was not being treated fairly." (*Id.* at 168.) For example, he "was getting multiple tasks to complete at the same time" and he was subjected to "petty" complaints. (*Id.* at 167–68.) The Court emphasizes that, where an employee seeks vindication of alleged employment-related unfair treatment that obviously has nothing to do with unlawful discrimination, it is patently improper and ultimately fruitless for the complainant to attempt to shoehorn those grievances into a federal civil rights lawsuit under Title VII. *Cf. Dale v. Chicago Tribune Co.*, 797 F.2d 458, 464 (7th Cir.1986) ("This Court does not sit as a super-personnel department that reexamines an entity's business decisions.")

### B. RACIAL AND SEXUAL HARASSMENT

█ Payano's harassment claims fail as a matter of law because he fails to allege that Fordham–Tremont was "per-

2. Where the employer terminated the employee for reasons entirely independent of the alleged harassment, the *Burlington/Faragher* affirmative defense is available, notwithstanding the fact that the employee was also subjected to an adverse employment action. *Patterson v. CBS, Inc.*, No. 94 Civ. 2562, 2000 WL 666337, at *8 (S.D.N.Y. May 22, 2000).

meated with 'discriminatory intimidation, ridicule, and insult,' that was 'sufficiently severe or pervasive to alter the conditions of the [his] employment.'" *Harris,* 510 U.S. at 21, 114 S.Ct. 367 (quoting *Meritor,* 477 U.S. at 65, 106 S.Ct. 2399) (alteration added). The work environment created by the alleged harassment must be not only "objectively hostile or abusive," but plaintiff must in fact "subjectively perceive the environment to be abusive." *Id.* In this regard, the Supreme Court has instructed that "'simple teasing' ... offhand comments, and isolated incidents (unless extremely serious) will not suffice to satisfy this standard." *Faragher,* 524 U.S. at 788, 118 S.Ct. 2275 (quoting *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 82, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998)); *Clark County School Dist. v. Breeden,* 532 U.S. 268, 271–72, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001).

Taking Payano's allegations as true, Warren pulled Payano's cheeks on one occasion, and she put her arms around Payano's waist on several occasions in the summer of 2001. Payano has made no allegation, and the Court can make no reasonable inference, that such conduct is particularly "sever[e]," "physically threatening or humiliating," or that it "unreasonably interfere[d] with an [Payano's] work performance." *Id.* at 371, 121 S.Ct. 1508. Payano's *only* explanation of the effects of the alleged harassment is contained in a paragraph in his opposition memorandum stating, "[Warren made him] feel uncomfortable, *as [he] felt that Ms. Warren was a double-faced person, pretending friendship, while hurting people behind their backs.*" (Payano Mem. ¶ 22 (emphasis added).) A plaintiff who is a victim of a feigned workplace friendship, or any other alleged unfair treatment at work, does not have a remedy under Title VII unless that unfair treatment relates to unlawful discrimination. As stated above, it is improper to seek to vindicate generalized employment grievances, which have nothing to do with unlawful discrimination, via a Title VII lawsuit.

■ Payano's racial harassment allegations are likewise insufficient. In the approximately one month between September 11, 2001 and Payano's termination in October, Payano alleges that Warren and Mosby "constantly" commented and "joked" that Payano looked like an Arab terrorist. (Payano Mem. ¶¶ 23–24.) If true, these comments are reprehensible, but, for the same reasons explained above in connection with Payano's sexual harassment allegations, his charge of racial discrimination fails to rise to the level required to demonstrate a hostile working environment. The Court is not persuaded that these incidents of simple teasing or offhand comments, even if offensive, satisfy the objective and subjective standards to establish unlawful discrimination on this basis. *See Faragher,* 524 U.S. at 788, 118 S.Ct. 2275.

Alternatively, the Court finds that Payano's hostile working environment claims fail as a matter of law because Fordham–Tremont has demonstrated the *Burlington/Faragher* affirmative defense as a matter of law, *i.e.,* that Payano unreasonably failed to take advantage of available grievance procedures. Combining the summary judgment standard and the substantive rule of the *Burlington/Faragher* affirmative defense, Fordham–Tremont will prevail on its motion for summary judgment if it demonstrates that there is no genuine issue of fact to dispute that (1) it "exercised reasonable care to prevent and correct promptly" the alleged harassment and (2) that Payano "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise."

*Ellerth,* 524 U.S. at 765, 118 S.Ct. 2257. As stated above, the existence of an anti-harassment policy is an important consideration in evaluating the first prong. *See Caridad,* 191 F.3d at 295. Fordham–Tremont has a written policy addressing discrimination grievance procedures, and the undisputed testimony establishes that Fordham–Tremont enforces it policy by promptly investigating complaints. Accordingly, the Court concludes that Fordham–Tremont exercised reasonable care to prevent harassment. *Cf. id.* (holding that, because defendant had a complaint-filing procedure it enforced, it satisfied the first prong of *Burlington/Faragher* affirmative defense).

It is also undisputed that Payano failed to avail himself of Fordham–Tremont's anti-harassment policy. As explained above, Payano therefore bears a burden to produce credible evidence explaining why he did not avail himself of the policy. *Leopold,* 239 F.3d at 246. In *Leopold,* the employee "simply asserted her apprehension that she would be fired for speaking up, and claimed generally that a co-worker's vague and ambiguous complaint was not taken seriously." *Id.* The Second Circuit affirmed the District Court's grant of summary judgment on the basis of the *Burlington/Faragher* affirmative defense. *Id.* Just as in *Leopold,* Payano relies solely on the unsubstantiated rumor that Warren could get him fired as retaliation. And just as in *Leopold,* the Court concludes here that, without more explanation than this unsubstantiated rumor, Payano's failure to take advantage of available grievance procedures was unreasonable as a matter of law. Therefore, Fordham–Tremont is entitled to summary judgment with respect to Payano's claims of harassment.

## V. *ORDER*

For the reasons discussed above, it is hereby

**ORDERED** that the motion of defendant Fordham–Tremont Community Mental Health Center for summary judgment on all of plaintiff Pedro Payano's claims is granted and the case is dismissed with prejudice.

The Clerk of Court is directed to close this case.

**SO ORDERED.**